O'CONNOR & ASSOCIATES, et
al., Plaintiffs,

v.

DEAN WITTER REYNOLDS, INC., et
al., Defendants.

No. 81 Civ. 1354(MEL).

United States District Court,
S.D. New York.

Jan. 11, 1985.

Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., and Kimmelman, Sexter & Sobel, New York City, for plaintiff O'Connor & Associates; Michael W. Coffield, Alton B. Harris, Robin J. Omahana, Michael D. McCormick, Chicago, Ill., and Arthur H. Sobel, New York City, of counsel.

Douglas F. Eaton, New York City, for plaintiff D. Keith Ross, Jr.

Jackson & Nash, New York City, for defendants Dean Witter Reynolds, Inc., Ann Marie Bero, Stephen Bradley, Fred Collins, John Damsen, John Hanson, Larry Hayden, Mike Kemp and David Kubat; Christopher S. Rooney, New York City, of counsel.

Shearman & Sterling, New York City, and McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendants Thomas

C. Reed and Quaker Hill Development Corp.; Robert F. Dobbin, Kathleen M. Comfrey, New York City, and Michael J. Plishner, John E. Morris, San Francisco, Cal., of counsel.

Dickerson, Reilly & Mullen, New York City, and Murphy Law Corp., San Anselmo, Cal., for defendants Jane Dunn and Dennis Martino; John H. Reilly, Jr., New York City, and Barry A. Murphy, Murphy Law Corporation, San Anselmo, Cal., of counsel.

LASKER, District Judge.

Defendants, Dean Witter Reynolds, Inc. ("DWRI"), Ann Marie Bero, Stephen Bradley, Fred Collins, John Damsen, John Hanson, Larry Hayden, Mike Kemp, David Kubat, Thomas C. Reed, Quaker Hill Development Corp., Jane Dunn, and Dennis Martino move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings to dismiss the fourth amended complaint in light of recent developments in the law. The motion is denied as to plaintiffs' federal securities laws and common law fraud claims and granted as to their RICO claims.

## I.

■ In an earlier opinion we held that plaintiffs had standing to pursue their civil damage claim against the defendants for violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1984), even though we found that defendants owed no fiduciary duty to options traders like plaintiff O'Connor & Associates ("O'Connor"). *See O'Connor & Associates v. Dean Witter Reynolds, Inc.*, 529 F.Supp. 1179, 1184–88 (S.D.N.Y.1981).[1] At that time we took into account defendants' contention that *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), precluded liability in such a case as this, observing that:

> In the present case, in contrast to *Chiarella*, it is alleged that corporate

insiders were the source of the material, inside information. There was no question in *Chiarella* that '[a]pplication of a duty to disclose prior to trading guarantees that corporate insiders, who have an obligation to place the shareholder's welfare before their own, will not benefit personally through fraudulent use of material, non-public information,' [*Chiarella, supra,* 445 U.S.] at 230 [100 S.Ct. at 1115] (footnote omitted), and that ' "[t]ippees" of corporate insiders ... have a duty not to profit from the use of inside information that they know or should know came from a corporate insider,' *id.* at 230, n. 12 [100 S.Ct. at 1116, n. 12], *citing Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* [495 F.2d 228,] 237–38 [ (2d Cir.1974).] Consequently, by virtue of their *fiduciary* duty to the corporation and its shareholders, corporate insiders become subject to the *separate* duty to either 'abstain or disclose.' Unlike the fiduciary duty, which is owed only to the corporation and its shareholders, this additional duty to disclose is owed 'to the investing public,' *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra* at 240, 'to those investors trading contemporaneouly with the insider ...' *Wilson v. Comtech Telecommunications Corp.,* [648 F.2d 88,] 94 [ (2d Cir.1981).]

> Thus, by virtue of the corporate insiders' duties to the corporation, they, and by derivation their tippees, indirectly came under a duty to O'Connor to 'abstain or disclose' if they possessed material nonpublic information.

*O'Connor & Associates, supra,* 529 F.Supp. at 1187.

On this new motion defendants contend here that *Moss v. Morgan Stanley Inc.,* 719 F.2d 5 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), decided since our earlier opinion, resurrects and supports their contention that plaintiffs do not have standing to assert their Section 10(b) claim because defendants did not owe a duty to them. In

---

**1.** The facts of this case are discussed therein, as     well as at 559 F.Supp. 800 (S.D.N.Y.1983).

*Moss,* the Court of Appeals found that the plaintiff, who sold the stock of a "target" company prior to the announcement of a tender offer could not obtain damages under Section 10(b) from the buyer of these shares who had obtained material nonpublic information from the tender offeror's investment advisor. *See id.* at 10–17. The court noted that the individual *Moss* defendants could not be viewed as "traditional" corporate insiders because they had acquired confidential information through the offeror's investment advisor and had no direct relationship with the takeover company. *See id.* at 11 & 15. Had they fallen into the category of "traditional" insider, the court pointed out,

> [i]t is well settled that traditional corporate 'insiders'—directors, officers and persons who have access to confidential information [8]—must preserve the confidentiality of nonpublic information that belongs to and emanates from the corporation. Consistent with this duty, the 'insider' must either disclose nonpublic corporate information or abstain from trading in the securities of that corporation.

———————

8. Ordinarily, 'insiders' include such corporate figures as directors and vice presidents, persons who have access to confidential corporate information and therefore owe a duty to a corporation's shareholders not to trade on that information. *See Dirks v. SEC,* 681 F.2d 824, 835 (D.C.Cir.1982), *rev'd on other grounds,* 463 U.S. 6467, 103 S.Ct. 3255, 77 L.Ed. 911 (1983); *O'Connor & Assoc.*[, *supra,*] 529 F.Supp. [at] 1184–85 ...; Langevoort, *Insider Trading and the Fiduciary Principle: A Post-Chiarella Restatement,* 70 Calif.L.Rev. 1, 19–24 (1982).

*Moss, supra,* 719 F.2d at 10–11 & n. 8 (portions of footnote 8, and footnote 9 omitted). The Court of Appeals went on to find that as "nontraditional" insiders, the *Moss* defendants owed no duty of disclosure to the plaintiff because they were " 'complete stranger[s] who dealt with the sellers' " of the target company's stock " 'only through impersonal market transactions.' " *Id.* at 15, *quoting, Chiarella, supra,* 445 U.S. at 232–33, 100 S.Ct. at 1116–17.

2. *See Moss, supra,* 719 F.2d at 10 n. 8.

While the answer to the question raised by defendants' present motion is not altogether obvious, *see e.g., Laventhall v. General Dynamics Corp.,* 704 F.2d 407, 413 (8th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 150, 78 L.Ed.2d 140 (1983), we do not agree with defendants that *Moss* goes further than *Chiarella* or covers the case at hand. In *Moss,* there was no allegation that the defendants had obtained their nonpublic information from corporate insiders and they could therefore not be considered "traditional" corporate insiders. *See Moss, supra,* 719 F.2d at 11. Here, by way of contrast, it is alleged that "corporate insiders were the source of material inside information", *O'Connor & Associates, supra,* 529 F.Supp. at 1187, and there is no doubt that in this case the insiders referred to were "traditional" insiders as that term is used in *Moss.*[2] The District Court in *Moss* specifically recognized this distinction.

> *O'Connor, supra* can be distinguished on its facts. The plaintiffs there claimed that the information traded upon without disclosure had come from the issuer, the other party to the merger, or both. While the Court did not specifically state that its conclusion would differ if the information had not come from the insiders, it did base much of its analysis on the duty of insiders. Thus, the Court did distinguish *Chiarella, supra,* by noting that in *O'Connor, supra,* the alleged sources of material information were insiders. This supports a reading of *O'Connor, supra,* to apply only to the situation of information leaked from the issuer. Any other reading of the case would flatly contradict the language in *Chiarella, supra,* that states that a duty to disclose arises from a relation between the parties. *Id.* 445 U.S. at 231, n. 14 [100 S.Ct. at 1116, n. 14]

. . . .

*Moss v. Morgan Stanley Inc.,* 553 F.Supp. 1347, 1354 (S.D.N.Y.1983) (Pollack, J.). *See also SEC v. Musella,* 578 F.Supp. 425, 438–39 & n. 12 (S.D.N.Y.1984).

Inasmuch as the Court of Appeals in *Moss* made no suggestion that the fiduciary duty requirement extends to situations in which corporate insiders "tip" material inside information to others who then trade on the basis of this information, we are not persuaded that our earlier finding quoted above has been eroded by this latest ruling. Accordingly, given the essentially unchanged factual allegations found in the fourth amended complaint, the reasons set forth in our earlier opinion, and the inapplicability of *Moss v. Morgan Stanley Inc.* to the alleged facts of this case, as we see it, defendants' motion is denied.

## II.

█ Defendants also seek to dismiss plaintiffs' common law fraud claims on the ground that, under common law, a defendant cannot be liable for an alleged failure to disclose material nonpublic information without proof of a confidential or fiduciary relationship between the parties.[3] They argue that since option traders like O'Connor are now owed fiduciary duties by corporate insiders and there is no suggestion arising from the alleged facts that the defendants engaged in affirmative acts which misled the plaintiffs, plaintiffs can have no claim for common law fraud. Plaintiffs rely upon the proposition of New York law that silence alone may constitute a fraudulent act when "failure to disclose a material fact is calculated to induce a false belief". *See Donovan v. Aeolian Co.*, 270 N.Y. 267, 271, 200 N.E. 815, 816 (1936), *quoted in, Minpeco, S.A. v. ContiCommodity Services, Inc., supra*, 552 F.Supp. at 336. They go on to argue that a jury in this case could find that it was not "honest dealing" when the defendants induced the plaintiffs to sell Amax options while failing to disclose the inside information about the Socal merger proposal. Defendants respond that plaintiffs rely upon cases in which liability was predicated upon an act or course of conduct tantamount to a false representation and that the defendants, by allegedly placing

orders for the purchase of Amax option contracts while possessing information about the proposed merger, could do nothing by their actions which could amount to a representation about the value of the call options.

In *Minpeco, S.A. v. ContiCommodity Services, Inc., supra*, a case upon which both parties rely, we found that under New York law "even between parties who do not have a fiduciary or confidential relationship, a duty to speak does arise where defendants have engaged in 'some act or conduct which deceived plaintiffs'". *Id.*, 552 F.Supp. at 336, *quoting, Moser v. Spizziro*, 31 A.D.2d 537, 537, 295 N.Y.S.2d 188, 189 (2d Dept.1968), *aff'd*, 25 N.Y.2d 941, 305 N.Y.S.2d 153, 252 N.E.2d 632 (1969). In addition, "conduct, even without speech, may be 'tantamount to a false representation.'" *Minpeco, supra*, 552 F.Supp. at 336, *quoting, D'Alessandra v. Manufacturers Casualty Insurance Co.*, 106 N.Y. S.2d 561, 564, 567 (Sup.Ct., Kings Co.1951).

In this case, the fourth amended complaint alleges that all of the defendants, with the exception of DWRI, purchased and subsequently sold Amax call options "knowingly, intentionally and with the intent to defraud Plaintiffs ... and to cause them to sell Amax call options in reliance on the nondisclosure by said Defendants of the material non-public information concerning the possible acquisition of Amax or its securities by Socal." Fourth Amended Complaint ¶ 72, filed Feb. 21, 1984, at 23–24. In addition, it is alleged that DWRI aided and abetted the defendants by executing purchases of Amax options "with the knowledge that, or in reckless disregard of whether, such purchases were fraudulent and based upon nondisclosure of material non-public information ...." *Id.* ¶ 73, at 24.

In light of these allegations, deemed to be true for the purpose of this motion, and our discussion in *Minpeco, supra*, of common law fraud elements which are relevant here, we do not agree with the defendants

---

**3.** *Citing, inter alia, Chiarella, supra*, 445 U.S. at 227–28, 100 S.Ct. at 1114–15; *Minpeco, S.A. v.*

*ContiCommodity Services, Inc.*, 552 F.Supp. 332, 335–36 (S.D.N.Y.1982).

that the allegation of an affirmative act is the *sine qua non* required to state a cause of action for common law fraud. We continue to believe, for the reasons set forth above and in our earlier published opinion, *see O'Connor & Associates, supra,* 529 F.Supp. at 1187–88, that defendants were under a duty to disclose the allegedly material nonpublic information in their possession. Their silence at the time it is alleged they purchased Amax options supports the conclusion that plaintiffs have alleged conduct on defendants' part exceeding "the bounds which separate shrewd trading from the domain of fraud." *Noved Realty Corp. v. A.A.P. Co., Inc.,* 250 A.D. 1, 6, 293 N.Y.S. 336, 341 (1st Dept.1937), *quoted in, Minpeco, supra,* 552 F.Supp. at 338. Defendants' motion seeking the dismissal of plaintiffs' common law fraud claim is accordingly denied.

### III.

■ Defendants finally move to dismiss plaintiffs' RICO claims, 18 U.S.C. §§ 1962–68 (1982), *inter alia,* on the ground that plaintiffs have not and cannot meet the pleading requirements recently developed by the Court of Appeals in *Sedima, S.P. R.L. v. Imrex Co.,* 741 F.2d 482, 503 (2d Cir.1984), and *Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 516 (2d Cir.1984). We agree, and now dismiss those claims without prejudice to plaintiffs' right to move to renew this cause of action in the event that, during the course of these proceedings, the United States Supreme Court or the Court of Appeals of this Circuit should hereafter allow assertion of the claim framed in the present complaint. Similarly, a motion to amend to state a civil RICO claim against defendant Thomas Reed would be permitted in the event he is convicted in the criminal proceeding currently pending in this District.

\*　　\*　　\*

Defendants' motion for judgement on the pleadings is denied as to plaintiffs' federal securities laws and common law fraud claims, and granted as to their RICO claims, which are dismissed without prejudice.

It is so ordered.