The CHASE MANHATTAN BANK, N.A., Plaintiff,

v.

FIDATA CORPORATION, et al., Defendants.

FIDATA CORPORATION, et al., Counterclaim Plaintiffs,

v.

The CHASE MANHATTAN BANK, N.A., Counterclaim Defendant.

No. 87 Civ. 4844(PNL).

United States District Court, S.D. New York.

Dec. 2, 1988.

Shereff, Friedman, Hoffman & Goodman, New York City (Barry L. Katz, of counsel), for counterclaim plaintiffs.

Kent T. Stauffer, The Chase Manhattan Bank, N.A., Litigation Div., Milbank, Tweed, Hadley & McCloy, New York City (Russel E. Brooks, of counsel), for counterclaim defendant The Chase Manhattan Bank, N.A.

## OPINION AND ORDER

LEVAL, District Judge.

Counterclaim-defendant, the Chase Manhattan Bank, N.A., moves under Fed.R. Civ.P. Rules 9(b) and 12(b)(6), to dismiss the counterclaims for failure to plead fraud with particularity and failure to state a claim upon which relief can be granted. Counterclaim-plaintiffs, Fidata, FTC and FSMI, move under Fed.R.Civ.P. Rule 15(a) to amend the counterclaims.

## BACKGROUND

The counterclaim-plaintiffs are Fidata—a banking organization incorporated under the laws of Delaware, its affiliate FTC—a New York trust company engaged in the business of providing securities clearance services in the government and municipal obligations market, and FSMI—a wholly-owned subsidiary of Fidata. They are referred to collectively as "FTC." Counterclaim-defendant Chase is a national banking organization organized under the laws of the United States, 12 U.S.C. § 27.

The counterclaim centers upon the trading activities in government securities of ESM, a financial institution placed in bankruptcy after its fraudulent conduct was revealed in March 1985. ESM engaged in a specialized form of borrowing known as a "repo" or "term repo." This is a transaction having the economics of a loan collateralized by pledge of a government security, presented in the form of a purchase (by the lender) of the government security with an agreement that the seller (borrower) will repurchase the security (repay the loan) at a specified time and price. Apparently, as explained more fully below, ESM was defrauding its lenders by double hypothecation of the government security it used in repo transactions. ESM is not named in this action. From 1981 through March 4, 1985, FTC operated as a clearing bank for ESM. Prior to 1984, Chase also provided clearing services for ESM.

FTC filed counterclaims against Chase on October 26, 1987 as part of its amended answer. The counterclaims asserted claims under the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a et seq., the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. § 1961 et seq., and state law. Subsequently, FTC filed amended counterclaims which add a claim for breach of warranty under § 8–306 of the New York Uniform Commercial Code and charge a somewhat different theory of recovery for securities and common law fraud.[1]

The amended counterclaims allege that in the period commencing prior to 1982 and continuing through March 4, 1985, ESM engaged in a massive scheme to defraud in the repo market involving double hypothecation. ESM engaged in transactions known in the trade as "reverse repos" which were term repos seen from the perspective of the lender. ESM would loan funds against collateral of a government security and the borrower's agreement to repurchase the security. ESM held the pledged securities at one of its clearing banks. ESM then used the securities it received in reverse repo transactions as collateral for its borrowings under term repo agreements.[2] Delivery of the security to the lender, or "contra" party under its

---

1. The motion to amend the counterclaims is granted. See *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Goldberg v. Meridor*, 567 F.2d 209, 213 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978).

2. In the term repo agreements, ESM would borrow funds giving a government security as collateral and would agree to repurchase the security at a set price and date. The party on the other side of the repo transaction is known as the "contra" party. A term repo for the borrower is thus a reverse repo for the contra party.

term repo borrowing would be accomplished by a book entry rather than by physical delivery. ESM represented to the contra parties that the securities would be placed in a segregated account. But, rather than place these hypothecated securities in a segregated account, ESM maintained them in its clearance account. It then used them a second time as collateral for loans it obtained from its clearing bank.

From 1981 through March 4, 1985, FTC operated as a clearing bank for ESM. In that period, ESM obtained loans from FTC using as collateral the securities already hypothecated to repo lenders. FTC extended credit to ESM on virtually a daily basis under a General Clearance, Draft Receivable Financing and Security Agreement dated September 18, 1981. By March 4, 1985, ESM was indebted to FTC in an amount in excess of $38 million for advances made under the Clearance Agreement and FTC held approximately $50 million of U.S. government and other securities.

Chase also provided clearing services to ESM from 1981 to 1983. As with FTC, ESM borrowed substantial sums from Chase using securities as collateral which it had already pledged to repo lenders. The counterclaim alleges that Chase knew that ESM's business consisted primarily of repos and reverse repos; that, following the collapse of Drysdale Government Securities, Inc. in 1982, Chase became wary of doing business with government securities dealers; and that, as a result, Chase audited ESM to determine whether it was solvent and operating in a legal manner. FTC alleges no later than the spring or early summer of 1983 Chase knew that the securities used as collateral for the loans from Chase were also pledged to repo participants and that ESM's lenders expected the securities pledged to them to be segregated and held free of any other lien.

In the spring of 1983, Chase also requested audited financial statements from ESM's parent corporation, ESM Group, Inc.; although ESM did not provide audited financial statements to Chase, it did provide unaudited financial statements.

In June 1983, Chase agreed to allow ESM to unwind its position with Chase without disclosing ESM's wrongful practices. Rather then the usual 30 days, Chase gave ESM 90 to 120 days to unwind the transactions in its clearing account at Chase. FTC alleges that Chase not only failed to disclose its knowledge of ESM's fraudulent activities, but also agreed to keep secret its real reasons for terminating ESM. Specifically, on July 1, 1983, Chase sent ESM a letter stating that Chase had "decided to discontinue this [clearing] service at this time." An internal Chase memorandum recording a conversation with Alan Novick, President of ESM, and appended to the original counterclaims (but not to the amended counterclaims) states: "We informed Alan that our current GNMA processing procedure needed to be revamped for better management and accounting control. To further explain our position, we pointed out the fact that his borrowing patterns and the use of customer's securities as collateral were not what we would consider a normal clearing transaction.... Handle in very low key, fashion as not to create rumors on the street (concern of A. Novick)." When Chase finally closed out ESM's account, it delivered the securities to the General Clearance Account at FTC without disclosing ESM's fraudulent activities to FTC.

The counterclaims allege that Chase decided to terminate its relationship with ESM because, had ESM's fraud become known, Chase's claim to the securities collateralizing its loans would have been challenged by the prior pledgers. Had Chase disclosed to FTC its true reason for terminating ESM, and not given ESM special consideration enabling it to stay in business, ESM would have been unable to perpetrate its fraud on FTC.

The counterclaims further allege that after Chase terminated its relationship with ESM and through 1985, Chase had actual knowledge that FTC cleared for ESM and that FTC relied on securities pledged by ESM as collateral for loans by FTC. Until the time of ESM's collapse, Chase acted as agent for ESM repo lenders without informing them or FTC that their securities

would not be placed in a segregated account. From 1974 to 1981, Chase provided loans to FSMI (then known as Bradford Securities Processing Services, Inc.) collateralized in part by securities maintained by ESM in accounts at Bradford. Moreover, in May 1982, Chase agreed to provide overnight financing to ESM for government securities held by FTC. FTC alleges that Chase knew of ESM's false representations to FTC and that Chase had a duty to disclose to FTC by virtue of its business relationship with FTC, its business with FTC as agent for customers of ESM, and its knowledge of FTC's reliance on ESM.

Upon these facts, FTC predicates counterclaims for primary violations of, aiding and abetting, and conspiracy to violate section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c), (d), and common law fraud, recklessness, gross negligence, common law negligence, and breach of warranty under N.Y.U.C.C. §§ 8–306(2), (3), (4).

Chase moves to dismiss under Fed.R. Civ.P. 9(b) and 12(b)(6). It argues that plaintiff has failed to allege any actionable misrepresentation and that its alleged failure to disclose was not compelled by any duty and was too remote to serve as a basis for secondary liability. For these reasons, it contends that the action must be dismissed under Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity and under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## DISCUSSION

On a motion to dismiss under 12(b)(6), the court must accept all of plaintiff's well-pleaded allegations and all reasonable inferences therefrom. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Yoder v. Or-*

*thomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir.1985). A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### 1. *Primary Violation of 10b–5*

■ A plaintiff in an action under Rule 10b–5 must allege: (1) that the defendant has misrepresented or omitted to state material facts (2) in connection the purchase or sale of a security, (3) that the plaintiff relied upon such misrepresentations or omissions to his detriment, and (4) that the misrepresentations were made with scienter. *See Basic, Inc. v. Levinson,* — U.S. ——, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir. 1985); *In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 502 (S.D.N.Y.1987). Chase contends that FTC does not allege any actionable misrepresentations or omissions in connection with the purchase or sale of a security.

■ The basis for FTC's allegation of a primary violation of 10b–5 is the delivery of securities held by Chase in ESM's account to the general clearance account at FTC for purchase by FTC. Counterclaim ¶¶ 30, 54.[3] FTC alleges that in transferring the securities Chase falsely warranted its good faith and authority, that the transfer was effective and rightful, that the securities were genuine and not materially altered, and that it knew of no fact that might impair the validity of the securities. *Id.* ¶ 54. FTC does not claim that these warranties were express; rather, it alleges that they are implied warranties under N.Y.U.C.C. § 8–306.

■ This does not state a claim for primary liability under Rule 10b–5. First,

3. With respect to the subsequent fraudulent acts of ESM after the transfer of securities from Chase in the spring of 1983, FTC has not alleged that Chase was the primary wrongdoer. Those allegedly fraudulent sales were between FTC

and ESM and thus if Chase is to be held liable at all for them it must be as an aider and abettor. *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 483 (2d Cir.1979).

**1258**

FTC has not alleged a sale of securities. In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court re-affirmed that Rule 10b–5 provides a remedy only for defrauded purchasers and sellers of securities. *See Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Although the pledge of stock constitutes a sale of a security under the Exchange Act, *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 939–40 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984); *Mallis v. Federal Deposit Insurance Corp.*, 568 F.2d 824, 830 (2d Cir.1977), *cert. dismissed*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), a transfer or deposit of securities does not constitute such a sale. *See First Federal Savings & Loan Ass'n v. Oppenheim, Appel, Dixon & Co.*, 629 F.Supp. 427 (S.D.N.Y.1986); *Troyer v. Karcagi*, 488 F.Supp. 1200, 1204–05 (S.D.N.Y.1980); *Sacks v. Reynolds Securities, Inc.*, 434 F.Supp. 37 (D.D.C.1977). The Exchange Act was "'passed for the protection of investors,'" not mere bailees of securities. *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 560 (2d Cir.1985) (quoting *Zeller v. Bogue Electric Mfg. Corp.*, 476 F.2d 795, 800 (2d Cir.), *cert. denied*, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed. 2d 146 (1973)).

The amended counterclaims allege only the transfer of a bailment. Plaintiffs do not allege that Chase possessed any ownership interest in the securities before the transfer; indeed, plaintiffs allege that Chase closed its position in the securities before they were transferred. Nor do counterclaim plaintiffs allege that FTC invested in the securities or acquired anything other than physical possession in them when they were transferred from Chase. The sale of securities occurred only later when FTC agreed to lend ESM money with the securities as collateral.

There is another reason why FTC has failed to state a claim under Rule 10b–5 for the misrepresentations made at the time Chase transferred the securities to FTC. These misrepresentations occurred in the spring of 1983. FTC alleges injury from pledges that ESM failed to meet in March 1985. It alleges that "From 1983 until it collapsed ESM made hundreds of [pledges] to FTC." Amended Counterclaim ¶ 50. FTC does not allege that it made pledges on, or suffered injury from, any of the securities that Chase transferred from its account to FTC.

█ A plaintiff seeking to recover under 10b–5 must allege that the act complained of was the proximate cause of the injury suffered. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985); *Nevitsky v. Manufacturers Hanover Brokerage Services*, 654 F.Supp. 116, 119 (S.D.N.Y.1987); *Miller v. Schweickart*, 413 F.Supp. 1062, 1067 (S.D.N.Y. 1976). A plaintiff must allege "both loss causation—that the misrepresentations or omissions caused the economic harm—and transaction causation—that the violations in question caused the [plaintiff] to engage in the transaction in question." *Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 313 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

In *Pross v. Katz*, 784 F.2d 455 (2d Cir. 1986), the Second Circuit held that a claim that the defendant sold a partnership interest to the plaintiff with the intent to convert the assets of the partnership did not allege fraud "in connection with" the sale of a security under Rule 10b–5 where the conversion occurred two years after the sale of the security. The Court noted that the purchase and sale of the security was complete at the time of the conversion of the partnership interest and that the success of the scheme was dependent on further fraudulent acts by the defendant. The court stated that the intent to cause injury "at some uncertain future time" did not "bring federal law into play," because "the steps to be taken to effectuate the fraud [were] not integral to the purchase and sale of the securities in question and [occurred] only well after the securities transaction [had] been completed. Other transactions or events [might have] intervene[d] and cause[d] the plan to be aban-

doned." *Id.* at 459. The Court of Appeals has held that where the defendant's misrepresentations do not concern the securities on which the plaintiff has suffered its loss but merely induce the plaintiff to purchase those securities the defendant may not be held liable under 10b–5. *See Bennett v. United States Trust Co.,* 770 F.2d 308, 314 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984); *see also Stern v. Leucadia National Corp.,* 644 F.Supp. 1108, 1111 (S.D.N.Y.1986), *aff'd in part, rev'd in part,* 844 F.2d 997 (2d Cir.1988); *Rich v. Touche Ross & Co.,* 415 F.Supp. 95, 99 (S.D.N.Y.1976); *Miller v. Schweickart,* 413 F.Supp. 1062, 1067 (S.D.N.Y.1976) (Weinfeld, J.) (allegation that defendant's concealment of violation of capital restrictions induced plaintiff to continue similar transactions with others does not state claim under 10b–5). In *Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.,* 801 F.2d 13 (2d Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987), in which the Court of Appeals did find loss causation, the court emphasized that the defendant by its misrepresentations induced the plaintiff to enter into repurchase agreements involving the *"particular* underlying government securities." *Id.* at 21.

FTC's claim is that the misrepresentations made by Chase with respect to certain securities caused plaintiff to accept pledges of *other* securities on which it suffered losses. FTC's theory of proximate causation, making Chase into a permanent insurer for the future transactions that FTC engaged in with ESM involving sales of different securities, cannot support liability under 10b–5. *Miller v. Schweickart,* 413 F.Supp. 1062, 1067–68 (S.D.N.Y.1976).

■ FTC's reliance on *City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463 (M.D.Pa.1985), is misplaced. In *City of Harrisburg,* the court considered a claim that the clearing agent for ESM was liable to a purchaser of government securities from ESM for misrepresenting that the securities were being held by the defendant in a segregated account. Defendant argued that the lapse of two years between the alleged misrepresentations and the injury suffered by the plaintiff made the plaintiff's reliance unreasonable as a matter of law. The court refused to accept this proposition, holding that a lapse of two years from the misrepresentation to the loss did not bar a claim under rule 10b–5. *See id.* at 472. Plaintiff's claim was that the misrepresentations were made with respect to the securities on which the plaintiff suffered its losses. That decision is thus consistent with the rulings that where a defendant misrepresents the value of a security, the fraud as to the security continues until the plaintiff discovers the falsity of the representation. *See Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 708–09 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *see also Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.,* 801 F.2d 13, 21 (2d Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). The fact that a person may be held liable for the loss the plaintiff suffers from misrepresentations as to a particular security, however, does not make that person liable for losses suffered on all future similar securities that the plaintiff may purchase.

Finally, there is a serious question whether plaintiffs have alleged an actionable misrepresentation under Rule 10b–5. Plaintiffs claim that Chase violated 10b–5 in two respects: Chase falsely made an implied warranty of its good faith and the absence of facts impairing the validity of the securities as a matter of law under N.Y.U.C.C. § 8–306; it also breached a duty to disclose that ESM had been double hypothecating the securities.

■ The allegation that Chase failed to disclose that ESM had been double hypothecating its securities does not state a claim under 10b–5 because FTC has not alleged any relationship between itself and Chase under which Chase would have a duty to disclose that information to it. *See Dirks v. S.E.C.,* 463 U.S. 646, 658, 103 S.Ct.

3255, 3263, 77 L.Ed.2d 911 (1983) (quoting *Chiarella v. United States*, 445 U.S. 222, 231–32 n. 14, 100 S.Ct. 1108, 1116–17 n. 14, 63 L.Ed.2d 348 (1980)); *United States v. Carpenter*, 791 F.2d 1024, 1031 (2d Cir. 1986) ("one may gain a competitive advantage in the marketplace through skill, foresight, industry and the like"), *aff'd*, ——— U.S. ———, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *D & G Enterprises v. Continental Illinois National Bank & Trust Co.*, 574 F.Supp. 263 (N.D.Ill.1983). The requisite relationship of trust and confidence is not supplied by Chase's provision of overnight clearing services to ESM for securities that would be transferred to FTC, *see Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152, 92 S.Ct. 1456, 1471, 31 L.Ed. 2d 741 (1972) ("if the two men and the employer bank had functioned merely as a transfer agent, there would have been no duty of disclosure"); *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478, 484 (2d Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed. 2d 731 (1980); *Ross v. Bolton*, 639 F.Supp. 323, 326–27 (S.D.N.Y.1986); *City of Harrisburg v. Bradford Trust Co.*, 621 F.Supp. 463, 473 (M.D.Pa.1985), or by the fact that Chase would gain from any loss suffered by its competitor, FTC. *See Hirsch v. duPont*, 553 F.2d 750, 761–62 (2d Cir.1977); *Union Carbide Corporation Consumer Products Business Securities Litigation*, 676 F.Supp. 458, 464 (S.D.N.Y.1987); *In re Am International, Inc. Securities Litigation*, 606 F.Supp. 600, 606–07 (S.D.N.Y. 1985); *cf. Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir.1984) (correspondent bank relationship and customer-bank relationship do not create fiduciary duty).

 Nor does FTC's allegation that Chase breached an implied warranty to inform FTC of any fact that might impair the value of the security state a misrepresentation within the scope of the Exchange Act. The federal securities laws establish a regulatory regime designed to insure full disclosure of material facts underlying the value of stock or a securities offering. The Exchange Act does not provide a supplement to essentially state-law causes of action regarding the purchase or sale of particular shares. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977); *Kas v. Financial General Bankshares, Inc.*, 796 F.2d 508, 513 (D.C.Cir.1986). Accordingly, the courts have held that no claim for relief is stated under 10b–5 by an allegation that the defendant failed to disclose its intent to breach fiduciary duties under state law, to convert the plaintiff's property, or to sell the securities at an unfair price, even if that disclosure would be material. *Hunt v. Robinson*, 852 F.2d 786 (4th Cir.1988) (claim that defendants refused to issue stock certificates is cognizable under state law, "[i]t is not transformed into a federal claim simply because the object of the bargain was shares of stock"); *Pross v. Katz*, 784 F.2d 455, 458 (2d Cir.1986) (misrepresentation that defendant would perform his duties as fiduciary faithfully); *Billiard v. Rockwell International Corp.*, 683 F.2d 51, 56 (2d Cir.1982) ("the fairness of the offering price is not a valid basis for an action under Section[ ] 10(b)"); *Bochicchio v. Smith Barney, Harris Upham & Co.*, 647 F.Supp. 1426 (S.D.N.Y.1986); *Miller v. Smith Barney, Harris Upham & Co.*, [1986 Transfer Binder] (CCH) Fed.Sec.L. Rep. ¶ 92,498 (S.D.N.Y.1986) [1986 WL 2762]. In all of these cases, the question whether the defendant had made a misrepresentation would turn solely upon an issue of state law. So too here, the question whether Chase breached an implied warranty is a state law issue and does not state a claim under 10(b).[4]

---

**4.** FTC relies on *McGrath v. Zenith Radio Corp.*, 651 F.2d 458 (7th Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981) and *Sullivan v. Thrifty*, [1983–84 Transfer Binder] Fed.Sec.L.Rep. ¶ 99,662 at 97,650–51 [1983 WL 1415], for the proposition that breach of contract may also amount to securities fraud. While it is true that "[m]aking a specific promise to perform a particular act in the future while secretly intending not to perform may violate Section 10(b)," *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986) (discussing *McGrath*), it by no means follows that the knowing breach of a state law implied warranty can support a federal claim

■ FTC argues, however, that Chase's decision to allow ESM extra time to unwind its clearing account at Chase and Chase's letter to ESM can support a claim for securities fraud. FTC alleges that "Chase allowed ESM to have th[e] additional time notwithstanding the fact that Chase knew or should have known that others, including FTC, would be misled by Chase's actions into continuing to do business with ESM." Amended Counterclaim ¶ 28. The letter sent by Chase to Alan Novick of ESM on July 1, 1983, stated that the reason ESM's account was being terminated was that Chase had "decided to discontinue this [clearing] service at this time." Amended Counterclaim ¶ 32. A misrepresentation communicated to one person can support a claim for fraud by another person if the maker of the misrepresentation intends or has reason to expect that the statement will be repeated to the other person. *Ostano Commerzanstalt v. Telewide Systems, Inc.*, 794 F.2d 763, 765–66 (2d Cir.1986); *Peerless Mills, Inc. v. American Telephone & Telegraph Co.*, 527 F.2d 445, 450 (2d Cir.1975); Restatement (Second) of Torts § 533 (1977). In addition, a claim of fraud can be made out by an act that is intended to mislead as well as by a misstatement. *O'Connor & Associates v. Dean Witter Reynolds, Inc.*, 600 F.Supp. 702, 705 (S.D.N.Y.1985); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 552 F.Supp. 332, 336 (S.D.N.Y.1982). In this case, however, FTC has not alleged that the letter from Chase to ESM was communicated to FTC or that, if it was, Chase intended or expected it to be communicated to FTC. Nor has FTC alleged that Chase intended FTC to be deceived into doing business with ESM. Absent such allegations, the facts that Chase sent a misleading letter to ESM and gave ESM extra time to unwind its account cannot support a claim for fraud by Chase. The claim for a primary violation of 10b–5 must therefore be dismissed.[5]

## 2. Aiding and Abetting Liability

■ FTC argues that Chase may nonetheless be held liable as an aider and abetter to ESM. In order to plead this claim, plaintiff must allege: 1) a securities law violation by the primary wrongdoer; 2) knowledge of the violation by the person sought to be charged; 3) and that the person sought to be charged substantially assisted in the primary wrongdoing. *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983); *IIT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980). Where the alleged aider-abettor does not owe a fiduciary duty to the defrauded party, recklessness is not sufficient and "[t]he scienter requirement scales upward." *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478, 484 (2d Cir.1979) (quoting *Woodward v. Metro Bank of Dallas*, 522

under 10b–5. *Cf. Jefferies & Co., Inc. v. United Missouri Bank of Kansas City, N.A.*, [1982–83] Fed.Sec.L.Rep. ¶ 99,257 (W.D.Mo.1983) [1983 WL 1331] (10b–5 claim based on misrepresentations other than breach of implied warranty on transfer of security); *Ford v. Cannon*, 413 F.Supp. 1393 (M.D.Fla.1976) (same).

**5.** Fidata argues that there exists a duty to disclose if the defendant knows that the plaintiff was acting under a reasonable mistaken belief with respect to a material fact, citing *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 283 (2d Cir.1975); *Beth Israel Medical Center v. Smith*, 576 F.Supp. 1061, 1071 (S.D.N.Y. 1983); and *Fund of Funds, Limited v. Arthur Andersen & Co.*, 545 F.Supp. 1314, 1359–60 (S.D. N.Y.1982). Those cases, however, all involved claims of common law fraud. In *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63

L.Ed.2d 348 (1980), the Supreme Court held that the law of federal securities fraud was not accurately stated by a jury instruction to the effect that a person who uses material nonpublic information at a time when "he knew other people trading in the securities market did not have access to the same information," *id.* at 231, 100 S.Ct. at 1116, can be held liable under 10b–5. The Court held that liability could not be imposed on Chiarella on a violation of a duty to disclose theory because he was not an agent or a fiduciary or a person in whom the sellers of the securities had placed their trust and confidence. *Id.* at 232, 100 S.Ct. at 1116–17. As Justice Blackmun remarked in dissent, this federal standard for liability under 10b–5 is more stringent than the standards under the common law duty to disclose. *Id.* at 247–48, 100 S.Ct. at 1124–1125 (citing *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 283 (2d Cir.1975)).

F.2d 84, 95 (5th Cir.1975)), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). Courts have required "something closer to actual intent to aid in a fraud," *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 485 (2d Cir.1979), or " 'scienter of the high "conscious intent" variety'." *IIT v. Cornfeld,* 619 F.2d 909, 925 (2d Cir.1980) (quoting *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 (5th Cir.1975)).

▮▮▮▮ To the extent that the counterclaims are based on misrepresentations occurring in the spring of 1983, they must be dismissed for the reasons already discussed in connection with the claim for primary liability. Although FTC has adequately pleaded the existence of a securities law violation in the pledge by ESM of already hypothecated securities, *see Marine Bank v. Weaver,* 455 U.S. 551, 554 n. 2, 102 S.Ct. 1220, 1222 n. 2, 71 L.Ed.2d 409 (1982); *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 939–40 (2d Cir.1984), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984); *Mallis v. Federal Deposit Insurance Corp.,* 568 F.2d 824, 830 (2d Cir.1977), *cert. dismissed,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), it has failed to sufficiently allege causation. *See Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 313 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir.1984). With respect to the transfer in 1983 of the account, FTC's claim is that Chase aided ESM by making it possible for ESM to later induce FTC to lend money on other double-hypothecated securities. This does not state a claim for aiding and abetting liability. *See In re Union Carbide Business Securities Litigation,* 666 F.Supp. 547, 564 (S.D.N.Y.1987) (assistance must relate to the preparation or dissemination of the fraudulent statement itself); *Terrydale Liquidating Trust v. Gramlich,* 549 F.Supp. 529, 531 (S.D.N.Y.1982); *Miller v. Schweickart,* 413 F.Supp. 1062 (S.D. N.Y.1976). The gist of FTC's contention is that Chase's failure to warn FTC of ESM's prior fraudulent conduct aided ESM's later perpetration of similar frauds on FTC because FTC's suspicions were not aroused. In the absence of a relationship between FTC and Chase giving rise to a duty to warn, such silence does not constitute aiding and abetting.

FTC argues that Chase also remained silent while FTC loaned funds to ESM against government securities, and that Chase provided overnight financing to ESM and acted as agent for ESM's customers. It contends that these allegations are sufficient to satisfy the substantial assistance requirement.

The allegation that Chase remained silent while FTC loaned funds to ESM on already hypothecated securities is insufficient as a matter of law. In this circuit "inaction on the part of the alleged aider and abettor ordinarily [is not] treated as substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in conscious and direct violation of a duty to act." *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *see In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493 (S.D.N.Y.1987). The complaint must allege "a conscious and specific motivation for not acting [or] an independent duty to report." *IIT v. Cornfeld,* 619 F.2d 909, 927 (2d Cir.1980).

Chase's silence was not in direct violation of a duty to report. As discussed, it had no duty to disclose toward FTC either as a competitor or as a clearing bank. *See, e.g., Ross v. Bolton,* 639 F.Supp. 323, 326–27 (S.D.N.Y.1986). "[T]he potential for financial gain does not, standing alone, indicate a high conscious intent to aid and abet a securities law violation." *In re Union Carbide Consumer Products Business Securities Litigation,* 676 F.Supp. 458, 463 (S.D.N.Y.1987); *In re Am International, Inc. Securities Litigation,* 606 F.Supp. 600, 606–07 (S.D.N.Y.1987).

Nor has FTC alleged facts from which it could be found that Chase's silence was designed intentionally to aid the fraud. The cases in which the courts have found a conscious and specific motivation for not acting have been limited to instances such as that in *Brennan v. Midwestern Life*

*Insurance Co.,* 417 F.2d 147 (7th Cir.1969), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970), where the defendant retreated from a threat to report the primary wrongdoer to state authorities because the fraud benefitted its attempt to accomplish a merger with another company. Banks have a financial interest in lending money to customers even when those customers used the funds to perpetrate a fraudulent scheme. Yet, the Court of Appeals has stated "if a bank lends money to a customer who then uses it to perpetrate a fraudulent scheme, there is probably neither intent nor causation on which to find the bank liable for a 10b–5 violation." *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 485 (2d Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). In this case, all that FTC has alleged is that it was to Chase's commercial benefit not to disclose to a competitor the results of its investigation of ESM. That is not a basis for aiding and abetting liability under 10b–5.

The allegations that Chase provided overnight financing to ESM and acted as agent for customers of ESM government securities in connection with which it deposited securities with FTC are also insufficient for the imposition of aiding and abetting liability. To establish liability, the acts of the aider and abettor must proximately cause the harm to the plaintiff. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 62–63 (2d Cir. 1985); *In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 504 (S.D.N.Y.1987). There is a thin line between ordinary commercial activity which is not actionable under 10b–5 and activity by which the defendant might have "associate[d] [itself] with the [fraudulent] venture [and] participate[d] in it as something that [it] wish[ed] to bring about," *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938) (*quoted in IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980)), sufficient to state a claim for aiding and abetting securities fraud. The securities laws do not require every participant in the commercial marketplace to become a whistleblower. The

courts have held that an accountant cannot be held liable on the basis of its business relations with the primary wrongdoer where there is no evidence that the accountant took any actions to defraud, *IIT v. Cornfeld,* 619 F.2d 909, 927 (2d Cir.1980); similarly, the courts have held that providing a surety bond to the wrongdoer, *Harrison v. Enventure Capital Group, Inc.,* 666 F.Supp. 473, 478 (W.D.N.Y.1987), lending money to a person who then uses it to perpetrate a fraudulent scheme, *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 485 (2d Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980), and clearing transactions that the defendant knew were rigged, *Ross v. Bolton,* 639 F.Supp. 323, 326–27 (S.D.N.Y.1986), are insufficient to impose aider-abetter liability. Whether or not the provision of overnight financing made it easier for ESM to perpetrate its fraud, it is not the type of wrong that the securities laws proscribe. *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979); *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 & n. 29 (5th Cir.1975).

With respect to the claim that Chase acted as agent for customers who loaned ESM money with the government securities as collateral, the courts have held that aiding and abetting liability under 10b–5 may not be predicated solely on allegations that the defendant assisted in depleting the assets behind a particular security. *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); *Landy v. Federal Deposit Insurance Corp.,* 486 F.2d 139, 163 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). In *Edwards & Hanly,* the defendant clearing bank assisted a broker-dealer in secretly embarking on a program of short-selling in breach of its fiduciary duty to the lending bank and also cleared transactions for the broker-dealer with other brokers. The short-selling significantly reduced the assets of the broker-dealer. When the stock market rose, the broker-dealer was unable

to meet its obligations to the other brokers, including the plaintiff. The Court of Appeals reversed a judgment entered against the clearing bank for aiding and abetting securities fraud, holding that plaintiff broker's loss was caused not by the short-selling but by the broker-dealer's failure to inform the plaintiff of the short-selling. There was no basis for the imposition of liability against the clearing bank because it did not participate in the misrepresentation and was under no fiduciary duty to the owners of securities that pass through its hands. 602 F.2d at 484.

One can perhaps imagine facts within the broad language of the counterclaim (other than those present in *Edwards & Hanly*) on which aiding and abetting liability could be predicated. But its allegations of fraudulent conduct with respect to Chase's actions as agent for its customers are vague and unspecified. Whether because the counterclaim is incapable of sustaining a claim for aiding and abetting liability or because it fails to employ sufficient specificity to satisfy the standards of Fed.R.Civ.P. 9(b), it is dismissed.

### 3. RICO

██ The fourth counterclaim charges Chase with a violation of RICO, 18 U.S.C. § 1962(a), (c), (d). The counterclaim alleges two enterprises: ESM and the association-in-fact of Chase–ESM, and charges Chase with investing the income from a pattern of racketeering in these enterprises, participating in the enterprises through a pattern of racketeering and conspiring with ESM to violate RICO. The alleged racketeering activity is identical to the charged securities fraud. It consists of (1) clearance activities performed on behalf of one or more of ESM's customers during the period when Chase knew that ESM was engaging in a massive securities fraud; (2) the transmittal on or about July 1, 1983 of a letter from Chase to ESM that concealed the ESM fraud and Chase's knowledge of the fraud; (3) the transfers of securities and money in ESM's account at FTC in August 1983 with accompanying misrepresentations; (4) aiding and abetting ESM's securities fraud; and (5) directly defrauding ESM

under the securities laws. Amended Counterclaim ¶ 80.

The counterclaim suffers from the same deficiencies as FTC's claim as securities fraud. With respect to the alleged conduct in the spring of 1983, the counterclaim either fails to allege actionable fraud or does not allege that FTC has been injured in its property or business by reason of the fraud. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). With respect to Chase's subsequent activities, the allegations either do not state a claim for fraud or are too vague to meet the standards of Fed.R.Civ.P. 9(b). *See Beck v. Manufacturers Hanover Trust*, 820 F.2d 46, 49–50 (2d Cir.1987); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19 (2d Cir.1983); *Plount v. American Home Assurance Company, Inc.*, 668 F.Supp. 204 (S.D.N.Y.1987); *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167 (S.D.N.Y.1985).

### 4. State Law Claims

The counterclaims also allege causes of action under state law for common law fraud, gross negligence, negligent misrepresentation, breach of warranty, contribution, indemnification and contribution. As to these claims, however, the court lacks jurisdiction.

██ The only possible basis for jurisdiction over these claims is as pendent claims to FTC's federal causes of action. The federal courts recognize a doctrine of *ancillary* jurisdiction under which the court has jurisdiction to adjudicate *compulsory* counterclaims if the main claim itself presents a colorable federal issue. *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *Moore v. New York Cotton Exchange*, 270 U.S. 593, 609, 46 S.Ct. 367, 370–371, 70 L.Ed. 750 (1926); *United States v. Heyward–Robinson Co.*, 430 F.2d 1077 (2d Cir.1970); *Frati v. Pravednekow*, 644 F.Supp. 751, 752 (E.D.N.Y. 1986). Such claims by definition "arise[ ] out of the transaction or occurence that is the subject matter" of the plaintiff's feder-

al claims, Fed.R.Civ.P. 13(a), and therefore may be deemed to share a "common nucleus of operative facts" so as to give the court constitutional power to hear the claim. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1138–1139, 16 L.Ed.2d 218 (1966). Permissive counterclaims do not arise out of the transaction or occurrence that is the subject matter of the plaintiff's claim. Fed.R.Civ.P. 13(b). They therefore require an independent basis of federal jurisdiction. *Federman v. Empire Fire & Marine Insurance Co.*, 597 F.2d 798, 812 (2d Cir. 1979); *Harris v. Steinem*, 571 F.2d 119, 122 (2d Cir.1978).

This court does not have ancillary jurisdiction over FTC's state law claims because such claims are permissive counterclaims and do not arise out of the subject matter of Chase's complaint. Chase's main complaint is for breach of contract with respect to securities processing services performed by the defendants on behalf of Chase's customer Royal Dutch Shell Company. FTC's counterclaims of fraud involve wholly different facts and proof and bear no logical relationship to Chase's complaint. *See United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir.1979); *Federman v. Fire Empire & Marine Insurance Co.*, 597 F.2d 798, 812 (2d Cir.1979).

FTC's assertion of federal claims under RICO and the Exchange Act does not provide the requisite independent basis of federal jurisdiction. Although the court might have the power to exercise jurisdiction over the state claims as pendent to FTC's federal claims, it is appropriate to dismiss them after the federal claims have been dismissed. *See United Mineworkers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (if federal claims are dismissed before trial, state law claims should be dismissed as well); *Nolan v. Meyer*, 520 F.2d 1276 (2d Cir.), *cert. denied*, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); *In re Union Carbide Consumer Products Business Securities Litigation*, 666 F.Supp. 547, 574–75 (S.D.N.Y.1987).

CONCLUSION

The motion to amend the counterclaims is granted. The motion to dismiss the counterclaims alleging violations of section 10(b) of the Exchange Act and section 1962(a), (c) and (d) of RICO is granted. The state law claims are dismissed for lack of jurisdiction.

SO ORDERED.