**Alison E. CLAPP, Plaintiff,**

v.

**Donald J. GREENE, et al., Defendants.**

**No. 90 Civ. 1690 (RPP).**

United States District Court,
S.D. New York.

Aug. 29, 1990.

Daniel J. O'Callaghan, New York City, for plaintiff.

Herrick, Feinstein by Robert K. Ruskin, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action for injunctive and declaratory relief and damages brought by a former partner in the law firm of LeBoeuf, Lamb, Leiby & MacRae ("LLL & M").

Plaintiff alleges that the individual partners of LLL & M have violated the Employee Retirement Income and Security Act of 1974, 29 U.S.C. §§ 1132(a)(1)(B), (a)(3) and 1140, as amended, ("ERISA") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., as amended, ("RICO"). Plaintiff also alleges various tort and contract violations under state law. Defendants now move for summary judgment dismissing both federal and certain state claims pursuant to Fed.R. Civ.P. 56 and 12(b)(6) for failure to state a cause of action and for failure to plead claims of fraud with particularity under Rule 9(b). Plaintiff cross-moves for summary judgment pursuant to Rule 56 and for injunctive relief pursuant to Rule 65. For the reasons set forth below, defendants' motion is granted and plaintiff's cross-motion is denied.

## BACKGROUND

Alison Clapp joined the law firm of LLL & M in 1981 as an associate attorney in the firm's tax department. Her work in the area of tax problems of regulated industries, especially those of public utilities, over the following four years earned her an invitation to join the LLL & M partnership. Clapp signed a Memorandum of Partnership Agreement dated January 1, 1986, (the "1986 Agreement") and in 1987 and 1988 signed amendments to the 1986 Agreement (collectively "the Partnership Agreement"). The Partnership Agreement provided that the term of the LLL & M partnership "shall be indefinite". Greene Aff., Exh. A.

During her years as an associate and continuing after she was made partner, plaintiff received nearly all of her billable work assignments from defendant John Richardson, at that time head of LLL & M's Tax Department. Amended Complaint ¶ 142. Despite her objections, plaintiff failed to obtain meaningful assignments from or involving other LLL & M tax partners. Clapp Aff. ¶ 7–8. In particular, during the years 1982 through 1986, plaintiff performed legal services under the direction of Richardson for one individual client, an English Insurer, amounting to

10–16% of her billable hours. *Id.* ¶ 145. Richardson also directed plaintiff to perform certain apparently non-billable assignments for the American Bar Association Tax Section, representing to her that he had the approval of the LLL & M Administrative Committee. *Id.* ¶ 10. Finally, plaintiff claims that Richardson purposely "wrote off," or failed to bill, $300,000 worth of her services performed between 1983 and 1987. Clapp Aff. ¶ 13.

At the same time, plaintiff alleges that Richardson induced her to postpone her efforts to conceive a child until after her advancement to partnership in 1986. Amended Complaint ¶ 166. Richardson allegedly made fraudulent representations assuring plaintiff that the firm would fully accommodate her in her childbearing efforts thereafter if, in consideration, she were to devote herself exclusively to her work prior to becoming a partner. Plaintiff now claims an increased difficulty in sustaining a pregnancy in detrimental reliance on defendants' earlier statements.

On October 26, 1988, Richardson announced his intention to withdraw from the LLL & M partnership and thereafter withdrew on November 15, 1988, taking tax work of the English Insurer client with him to a competing firm. Amended Complaint ¶ 200. Plaintiff claims that, following Richardson's departure, other LLL & M tax partners failed to direct assignments to her and that she was thus unable to maintain an acceptable level of billable hours, having been deprived of client development opportunities over the years. Clapp Aff. ¶ 15.

On February 21, 1989, defendant Greene, a member of the LLL & M Administrative Committee, met with plaintiff and allegedly informed her, in substance, that the firm was dissatisfied with her productivity and that there was no future for her at the firm. Greene Aff. ¶ 14; Clapp Aff. ¶ 10. Greene claims, however, to have offered plaintiff the chance to present a plan for improvement to remedy the situation. Greene Aff. ¶ 14.

In September, 1989, Greene informed plaintiff of the firm's decision to terminate her as a partner. Plaintiff objected to this termination and defendants maintain that the LLL & M partnership was dissolved on December 31, 1989, and a new partnership agreement signed as of January 1, 1990. Plaintiff was not included as a partner in the newly-formed partnership. Plaintiff was offered but declined to accept a lump-sum distribution of all accrued benefits under the LLL & M Retirement and Profit Sharing Plans, the 401(k) plan and her single participant profit sharing plan. Stuken Aff. ¶ 5; Clapp Aff. ¶ 27. Plaintiff has apparently elected to maintain self-financed continuing coverage under the LLL & M group health and medical insurance plan pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Stuken Aff. ¶ 6.

Apart from the foregoing actions which apparently are the basis for her claim under ERISA against the defendants, plaintiff outlines a separate series of events for the purposes of establishing a RICO violation. Essentially, the complaint recites that defendants Irving Moskovitz, Peter Schiller and John Young were tax partners in the New York law firm of Graubard, Mollen, Dannett, Horowitz & Pomeranz. These defendants resigned their firm to join LLL & M as partners in 1988, bringing a large client and several other clients with them to LLL & M.[1] Amended Complaint ¶ 20–22. Plaintiff complains that LLL & M through its Administrative Committee secretly guaranteed to Moskovitz, Schiller and Young, while each of them was still obligated under a partnership agreement to devote their efforts to the former firm, specific salaries and other benefits if they were successful in transferring a large client account to LLL & M from their former firm. Moskovitz, Schiller and Young agreed and became partners of LLL & M on June 1, 1988. Plaintiff's RICO claim states that these acts were commercial bribery and bribe receiving in violation of New York Penal Law §§ 180.03 and 180.08 as the required two predicate felonies,

---

1. Moskovitz, Schiller and Young are also defendants in a pending action in New York Supreme Court alleging, *inter alia,* breach of contract and breach of fiduciary duty. *Graubard, Moskovitz, Dannett Horowitz & Mollen v. Moskovitz et al.,* No. 23411/88.

Amended Complaint ¶¶ 31–41, and deems the continuing receipt of compensation from LLL & M by Moskovitz, Schiller and Young to constitute a pattern of racketeering activity. *Id.* ¶ 60.

## DISCUSSION

### ERISA CLAIMS

■ A court should dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) when it appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Philips Business Sys., Inc. v. Executive Communications Sys., Inc.,* 744 F.2d 287 (2d Cir.1984). For this purpose, the allegations of the complaint are taken as true, *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), and examination is made whether those allegations constitute a "short and plain" statement of a claim showing that the pleader is entitled to relief. Fed.R. Civ.P. 8(a). *See* Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1357. When examining the sufficiency of the complaint under Rule 8(a), however, conclusory allegations merely stating the general legal conclusions necessary to prevail on the merits and which are unsupported by facts are not taken as true. *Packer v. Yampol,* 630 F.Supp. 1237, 1241 (S.D.N.Y. 1986); *M & M Transportation Co. v. U.S. Industries, Inc.,* 416 F.Supp. 865, 869 n. 4 (S.D.N.Y.1976). Examined in this light, plaintiff's allegations constitute a claim not cognizable under ERISA or are not sufficiently alleged to put defendants on notice so that they can form a responsive pleading.

Section 510 of ERISA provides: "It shall be unlawful for any person to discharge … a participant or beneficiary … for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]…." 29 U.S.C. § 1140 (1982). Section 510 essentially prohibits employers from, *inter alia,* "discharging … their employees in order to keep them from obtaining vested pension rights." *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111 (2d Cir.1988) (quoting *West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980)).

Plaintiff claims that her expulsion from the firm interfered with her rights under ERISA by preventing her from continuing to be enrolled in LLL & M's pension benefit and health and medical plans.[2] However, plaintiff's claim that had she remained as a partner, she would have accrued additional benefits is not cognizable under § 510. *Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 232 (S.D.N.Y.1989); *Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd mem.,* 742 F.2d 1441 (2d Cir.1983) ("No ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment."). *See also Gavalik v. Continental Can Co.,* 812 F.2d 834, 851 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) ("Proof of incidental loss of benefits as a result of a termination will not constitute a violation of § 510.); *Corum v. Farm Credit Svcs.,* 628 F.Supp. 707, 718 (D.Minn.1986) ("[P]laintiff must show more than lost opportunity to accrue additional benefits,"); *Baker v. Kaiser Aluminum & Chem. Corp.,* 608 F.Supp. 1315, 1319 (N.D.Cal.1984) ("The only evidence offered by plaintiff is that if he had not been terminated, he would have been able to accrue additional benefits.").

Apart from this deprivation, there are no facts alleged to allow the Court to find that plaintiff can prove any set of facts in support of her claim. *See Packer v. Yampol,* 630 F.Supp. at 1241 ("Plaintiffs bear the burden of pleading facts in support of each element of their 10b–5 claim, and they have not pleaded *facts* constituting an injury.") (emphasis in original). Her ERISA claims

---

2. Plaintiff's Amended Complaint ¶ 123 states in relevant part: "On or about December 31, 1989, and continuing thereafter LLL & M by and through the LLL & M Admin. Comm. …, represented the expulsion of Plaintiff from LLL & M, thereby terminating and/or limiting Plaintiff's rights, benefits and entitlements to the LLL & M Benefit Plans," and that LLL & M's represented expulsion "is for the purpose of interfering with the attainment of rights to which Plaintiff may become entitled under [the LLL & M benefit plans] and under ERISA." *Id.* ¶ 125.

in paragraphs 123 and 125 of the complaint are stated as a mere conclusion of law. Her repetition and reallegation of paragraphs 13 through 118 add nothing of substance to the claim. The remaining allegations pertaining to this claim, contained in paragraphs 126 through 128, merely request particular relief. It cannot be said that these allegations sufficiently put defendants on notice of their actions so that they may form a responsive pleading. Accordingly, this claim is dismissed pursuant to Fed.R.Civ.P. 12(b)(6). *See Toomey v. Wickwire Spencer Steel Co.*, 3 F.R.D. 243 (S.D.N.Y.1942) (dismissing complaint where it set forth a "hazy mass of conclusions" without any plain statement of the facts upon which the claim was based).

## RICO CLAIMS

■ Section 1964(c) of the RICO statute authorizes a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). To state a claim for damages under section 1964(c), a plaintiff must first allege a violation of the substantive RICO statute, 18 U.S.C. § 1962(a)-(c). Under § 1962(a)-(c), plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

The pattern requirement is a common thread in all three sections of the criminal RICO statute:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest ... any part of such income, or the pro-

ceeds of such income, in acquisition of any interest in ... any enterprise....

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain ... any interest in or control of any enterprise....

(c) It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity....

18 U.S.C. § 1962.

In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court indicated that two predicate acts may not be sufficient to establish a pattern of racketeering activity within the meaning of § 1962 where the "factor of *continuity plus relationship* which combines to produce a pattern" is missing. *See also Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir.), *vacated and remanded*, —— U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), *reaffirmed*, —— U.S. ——, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989); *United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989).[3]

A pattern is established for RICO purposes where the predicate acts "themselves amount to, or ... otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989) (emphasis in original). The Supreme Court in *H.J. Inc.* explained that predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the pattern requirement. *Id.* 109 S.Ct. at 2902. In this case, plaintiff alleges a single predicate transaction, i.e., that the agreed upon compensation which LLL & M offered and defendants Moskovitz, Schiller and Young accepted to breach their partnership agreement and transfer certain client accounts from their former firm to

**3.** Analysis of continuity and relationship initially focused on the pattern element under *Sedima*, then shifted to the enterprise element under *United States v. Ianniello*, 808 F.2d 184, 191 (2d Cir.1986) ("[T]he inquiry as to relatedness and continuity is best addressed in the context of the concept of 'enterpise'."), *cert. denied*, 483 U.S.

1006, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987), but has now come to rest in this Circuit once again on the pattern element. *Beauford v. Helmsley*, 865 F.2d at 1391 ( [O]ur analysis of relatedness and continuity has shifted from the enterprise element to the pattern element.").

LLL & M constituted commercial bribery. Plaintiff alleges no facts from which a threat of continued bribery may rationally be inferred. *See Continental Realty Corp. v. J.C. Penney Co.*, 729 F.Supp. 1452 (S.D.N.Y.1990); *USA Network v. Jones Intercable, Inc.*, 729 F.Supp. 304, 318 (S.D.N.Y.1990) (no threat of continuity where alleged purpose of fraudulent scheme was "essentially accomplished"); *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F.Supp. 579, 584 (S.D.N.Y.1989) (no pattern of racketeering activity where complaint alleged "a closed-ended, single scheme involving three perpetrators ..., one victim ..., and an uncomplicated transaction....") LLL & M's continued payment of compensation to Moskovitz, Schiller and Young will not transform a single alleged bribe into a pattern for RICO purposes. *See also Bingham v. Zolt*, 683 F.Supp. 965, 970 (S.D.N.Y.1988) (improper to "characteriz[e] the defendant's subsequent enjoyment of the proceeds of the scheme as continuous criminal activity,") (analyzing enterprise element).

Nor is there any showing that a threat of continuity exists because the predicate acts are a regular way of conducting defendant's ongoing legitimate business. *H.J. Inc.*, 109 S.Ct. at 2902. Plaintiff alleges no facts tending to show that LLL & M makes a practice of subverting mainstay client accounts at other firms by luring away the billing partners as a means of increasing LLL & M's profitability or building its client base. *See Azurite Corp. v. Amster & Co.*, 730 F.Supp. 571, 581 (S.D.N.Y.1990) (short-term, closed-ended scheme did not show threat of continuity absent allegations that defendants had committed the same or similar acts before or that they had committed them again after the period in question); *Continental Realty*, 729 F.Supp. at 1455 ("[T]here is no reason to believe that Home Depot will continue to provide dummy bids for the Defendants in other real estate transactions."). Accordingly, plaintiff's RICO claims are dismissed in their entirety.

### STATE CLAIMS

The only asserted bases for federal jurisdiction in this case are plaintiff's RICO and ERISA claims. Amended Complaint ¶¶ 9–10. Having found these claims deficient, the Court declines to exercise pendent jurisdiction over the state claims, counts three through fifteen, and these will be dismissed as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Chase Manhattan Bank, N.A. v. Fidata Corp.*, 700 F.Supp. 1252, 1261 (S.D.N.Y.1988).

### CONCLUSION

In conclusion, the plaintiffs have failed to allege either an ERISA or RICO violation in conformity with the governing statutes, and defendant's motion to dismiss those claims is therefore granted. Plaintiff's motion for injunctive relief is denied. Because the state law claims are dismissed for lack of jurisdiction, plaintiff's motion for summary judgment on those claims is denied. Both parties' motions for sanctions under Fed.R.Civ.P. 11 are denied.

It should also be noted that the Court does not appreciate being served with six inches of papers which plaintiff's counsel delivered to chambers on August 24, 1990, and identified as an undocketed mandamus petition that he would be forced to file if the Court did not act in this case prior to August 29, 1990. The Court has advised counsel at earlier appearances that his marital relationship with plaintiff was bound to blind his professional judgment. The Court finds counsel's conduct unbecoming a member of the bar of this Court. If counsel wished to file a petition for mandamus, he should so file it. Plaintiff's counsel has advised the Court that he supplied the mandamus petition on the advice of a Legal Coordinator on the staff of the Second Circuit and that such a procedure was intended to be a courtesy to this Court. The Court accepts this explanation of counsel's intention but disapproves of the procedure followed.

SO ORDERED.