Alison E. CLAPP, Plaintiff,

v.

LeBOEUF, LAMB, LEIBY & MacRAE, Donald J. Greene, Donald J. Greene, P.C., Taylor R. Briggs, Taylor R. Briggs, P.C., Alan M. Berman, Geoffry D.C. Best, David P. Bicks, David P. Bicks, P.C., Charles W. Havens, III, Charles W. Havens, III, P.C., Douglas W. Hawes, Douglas W. Hawes, P.C., Carl D. Hobelman, Carl D. Hobelman, Chartered,

Ronald D. Jones, Ronald D. Jones, P.C., Grant S. Lewis, Grant S. Lewis, P.C., Cameron F. MacRae, III, Cameron F. MacRae, III, P.C., Samuel M. Sugden, Samuel M. Sugden, P.C., Collectively The LeBoeuf, Lamb, Leiby & MacRae "Administrative Committee", LeBoeuf, Lamb, Leiby, & MacRae, Irving Moskovitz, Peter N. Schiller, John A. Young, John C. Richardson, John C. Richardson, P.C., Hon. Diane A. Lebedeff, Individually and in her past or present capacity as Justice of the Supreme Court of the State of New York, New York County, and Hon. Joseph P. Sullivan, Hon. Richard W. Wallach, Hon. Theodore R. Kupperman, Hon. David Ross, Hon. Betty Weinberg Ellerin, Hon. Francis T. Murphy, Hon. John Carro, Hon. Bently Kassal, Hon. George Bundy Smith, Hon. Ernst H. Rosenberger, Each individually and in his/her past or present official capacities as Justices of the Appellate Division of the Supreme Court of the State of New York, First Department, (collectively The "Appellate Division," First Department), Defendants.

No. 93 Civ. 8084 (SS).

United States District Court,
S.D. New York.

Aug. 22, 1994.

dants' and plaintiff's motions for sanctions are denied.

Daniel J. O'Callaghan, New York City, for plaintiff.

Herrick Feinstein, LeBoeuf, Lamb, Leiby & MacRae, New York City (Carol N. Goodman, Christopher J. Sullivan, of counsel), for defendant.

G. Oliver Koppell, Atty. Gen., New York City (Abigail J. Petersen, of counsel), for defendants.

## ORDER AND OPINION

SOTOMAYOR, District Judge.

Plaintiff Alison Clapp, a former partner of defendant law firm LeBoeuf, Lamb, Leiby & MacRae ("LeBoeuf"), filed the instant action against LeBoeuf, individual firm members and professional corporations (collectively, the "LeBoeuf defendants"), and the Honorable Justice Diane A. Lebedeff of the Supreme Court of the County of New York and the judges of the Appellate Division, First Department of the State of New York (collectively, "the State defendants"). The genesis of this federal action is Clapp's exclusion from membership in LeBoeuf after its 1989 dissolution and subsequent reconstitution in 1990.

All of the defendants have moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to 12(b)(6) for failure to state a claim. The LeBoeuf defendants have also moved, pursuant to Fed.R.Civ.P. 65, to enjoin plaintiff from instituting further actions against the defendants without prior court approval, and for sanctions against plaintiff pursuant to Fed.R.Civ.P. 11. Plaintiff has likewise moved for sanctions against the defendants under Rule 11. For the reasons discussed below, defendants' motions to dismiss are granted, the LeBoeuf defendants' motion to enjoin litigation without prior approval is denied, and the LeBoeuf defen-

## I. Background

### A. Alison Clapp's Expulsion From LeBoeuf

Alison Clapp joined LeBoeuf as an associate attorney in its tax department in 1981 and became a partner in 1986. In 1986, 1987 and 1988, plaintiff signed partnership agreements with the firm, which provided that the partnership term "shall be indefinite." Clapp's tenure at the firm deteriorated, however, apparently due to disagreements over her billable hours and productivity. In September 1989, when Clapp learned of her impending termination from the firm, she objected. LeBoeuf, nevertheless, ended the partnership relationship with plaintiff on December 31, 1989, when the firm of LeBoeuf, Lamb, Leiby & MacRae dissolved, and subsequently reformed on January 1, 1990, without plaintiff. Defendants also paid plaintiff those sums defendants believed were due to plaintiff under the partnership agreement. Clapp thereafter began her litigation crusade against LeBoeuf and its members through the federal and state courts.[1]

### B. The March 1990 Federal Action

In March 1990, Clapp filed a federal action against LeBoeuf and several of its individual partners, alleging that the defendants had violated the Employee Retirement Income and Security Act of 1974, 29 U.S.C. §§ 1132(a)(1)(B), (a)(3) and 1140, as amended, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, as amended. The complaint also asserted various breach of contract and tort claims. By Order dated August 29, 1990, as amended by Order dated October 16, 1990, Judge Robert P. Patterson, Jr. granted the defendants' motion to dismiss. *See Clapp v. Greene,* 743 F.Supp. 273 (S.D.N.Y.1990). On October 26, 1990, Judge Patterson also denied plaintiff's motions to vacate his August 29th Order and for recusal and injunctive relief. The Second

---

1. A detailed discussion of plaintiff's termination is set forth in *Clapp v. Greene,* 743 F.Supp. 273 (S.D.N.Y.1990), wherein the court dismissed Clapp's ERISA and RICO action against the vari-

ous defendants, including LeBoeuf and several of the firm's partners also named in the instant action.

Circuit affirmed Judge Patterson's Orders on March 29, 1991. *Clapp v. Greene*, 930 F.2d 912 (2d Cir.1991).

### C. *The State Court Lawsuits*

In two separate state court actions filed in New York Supreme Court, New York County, Clapp again sued LeBoeuf, challenging her expulsion from the firm on the ground that the firm's 1989 dissolution and subsequent reformulation violated New York's partnership laws. Plaintiff's first action sought specific performance of the LeBoeuf partnership agreement, an accounting of partnership profits and declaratory and injunctive relief. In her second state court action, Clapp alleged claims of breach of contract, fraud, promissory estoppel and intentional infliction of emotional distress. By Order dated February 14, 1992, defendant Justice Lebedeff granted summary judgment for the defendants and dismissed both lawsuits.

Plaintiff appealed Justice Lebedeff's decision to the Appellate Division, First Department, which unanimously affirmed the lower court decision on December 15, 1992. Shortly thereafter, on or about April 8, 1993, the First Department denied plaintiff's request for leave to appeal to the Court of Appeals; plaintiff, nonetheless, filed a Notice of Appeal as of right to the Court of Appeals. The Court of Appeals dismissed the appeal in May 1993, finding that "no substantial constitutional question is directly involved."

### D. *The Instant Federal Action*

On November 23, 1993, soon after the dismissal of her state court lawsuits, Clapp filed the instant action against the LeBoeuf defendants, Justice Lebedeff and the judges of the Appellate Division, First Department. Clapp's complaint and subsequent submissions to this Court can only be described as turgid. After much effort in deciphering Clapp's voluminous submissions and her arguments before this Court, I discern the following five categories of claims, all of which are essentially premised on Clapp's contention that the defendants have misconstrued or misapplied New York's partnership

laws, with the result of depriving her of her interest in continuing in the LeBoeuf partnership without due process of law.

First, Clapp appears to being challenging the state courts' legal interpretation of New York's partnership laws. She argues that the state courts' interpretation of those laws divested the statutes of their due process notice aspects, and, according to Clapp, made the laws "nugatory". Second, Clapp asserts a claim against the partnership laws as applied to her, arguing that the partnership laws deprived her of her property interest in the LeBoeuf partnership, without benefit of due process of law. Third, Clapp attempts to impose liability on LeBoeuf under 42 U.S.C. § 1983 for an unconstitutional taking of property, on the ground that LeBoeuf is a state actor as a result of its illegal utilization of the state's laws to divest her of her partnership interest. Fourth, Clapp alleges that the State defendants and LeBoeuf conspired to deprive her of her partnership interests in LeBoeuf without due process of law. Finally, Clapp also claims that the judicial procedure followed in her state court cases denied her a full opportunity to present her claims at the trial level and in the appellate courts. For all of these alleged violations of law, Clapp seeks damages as well as declaratory and injunctive relief. Complaint, ¶¶ 58–61.

On December 12, 1993, Clapp moved for a preliminary injunction enjoining LeBoeuf from terminating her interest in the firm. On numerous grounds, not the least that the LeBoeuf partnership in which plaintiff had been a member had dissolved four years earlier, I denied the preliminary injunction motion. Clapp challenged the legitimacy of my ruling by, in addition to appealing the denial of injunctive relief to the Second Circuit, moving for my recusal.[2] Plaintiff argued in support of recusal that I was wrong in denying her preliminary injunction motion and that I had demonstrated an improper demeanor towards plaintiff and her counsel during the preliminary injunction hearing held before me on December 20, 1993, and that my "suggestion of sanctions against counsel and the plaintiff, in context of the

---

**2.** Plaintiff's appeal from my denial of her request

for a preliminary injunction is pending.

facts and circumstances of this case," required my recusal. Transcript of March 31, 1994 Hearing, p. 3 ("Tr."). I subsequently denied the motion to recuse, finding no grounds to justify my removal from this action.

In addition to opposing Clapp's preliminary injunction motion, the State defendants have cross-moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6), for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The LeBoeuf defendants have also moved to dismiss on the same grounds, and further seek to enjoin plaintiff, pursuant to Fed.R.Civ.P. 65, from instituting any further lawsuits against the LeBoeuf defendants, without prior leave of the Court.

In response to defendants' motions, plaintiff has filed a steady stream of opposing documents and further motions. Clapp moved for sanctions against defendants, pursuant to Fed.R.Civ.P. 11, urging me to penalize defendants because they had submitted an unsigned cross-motion for dismissal and supporting memoranda. The motion was without merit and I denied her request for sanctions on March 21, 1994.

Thereafter, plaintiff filed a motion for reargument of her Rule 11 motion and she submitted supplemental papers on her motion to recuse. On April 29, 1994, I denied plaintiff's motion for reargument because she failed to present any legally cognizable basis for reconsideration of my decision.

Although all of plaintiff's initial motions were unsuccessful, she remained undaunted. She moved for Rule 11 sanctions a second time, on May 13, 1994. In this second motion, plaintiff claims that sanctions should be imposed on the defendants because they did not serve or file opposition papers to her motion to recuse, which Clapp argues was still pending because there was no denial of the recusal motion entered on this Court's docket. Plaintiff also requests that defendants' letter responses to her supplemental papers in support of her motion to recuse be stricken because they are prejudicial to her.

Consistent with plaintiff's practices, she has also recently requested a conference regarding my denial of her motion to modify a transcript of a hearing before me because her counsel claims that the transcript does not accurately reflect what I said at the hearing. By Order dated August 12, 1994, I denied this request, advising plaintiff and her counsel that I did not say what counsel claims I said. A hearing or conference will not alter the fact that even if I had said what counsel claims, which I did not, I would have misspoken because I do not personally know Justice Lebedeff and have never had any personal or business contact with her that I can recall.

This summary rendition of plaintiff's motions illustrates the burdens of her motion practice on this Court and on the opposing parties.

### E. *The March 31, 1994 Hearing*

The parties appeared before me at a hearing to argue the motions to dismiss on March 31, 1994 ("the Hearing"). At the Hearing, I explained to plaintiff's counsel that I had had difficulties in deciphering plaintiff's submissions. I posed several questions to plaintiff's counsel, in order to understand plaintiff's claims. Despite my efforts to clarify Clapp's arguments, plaintiff's counsel was unresponsive to my inquiries, often refusing to answer my questions and directing me to plaintiff's submissions as adequate to explain her position.

### II. *The Motion to Dismiss Pursuant to Rule 12(b)*

The LeBoeuf and State defendants argue several grounds in support of their motions to dismiss. The grounds set forth in the defendants respective motions are similar and overlap. Briefly and collectively described, the defendants move for dismissal on the grounds that: 1) this court lacks subject matter jurisdiction; 2) the claims are time-barred; 3) *res judicata* and collateral estoppel bar any further litigation of the instant claims; 4) Clapp has not stated a claim under 42 U.S.C. § 1983; and 5) the State defendants are exempt under the doctrine of judicial immunity from liability for damages.

I reject the defendants' challenges based on lack of subject matter jurisdiction, the

timeliness of the action, and *res judicata* and collateral estoppel. However, defendants' other grounds for dismissal have merit and I find that under any of the theories advanced by Clapp, Clapp fails to state a viable federal claim.

## A.  Subject Matter Jurisdiction

Defendants claim that this Court lacks jurisdiction because, by the instant action, plaintiff actually seeks federal review of New York state court decisions, which review, defendants argue, is wholly outside the scope of this Court's jurisdictional authority. Although I agree that this Court does not have authority to review state court decisions based on state law, this Court does have subject matter jurisdiction over federal claims.

■ This Court's jurisdiction is circumscribed by the principle that a district court may not review final judgments of state courts. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 483–84 n. 16, 103 S.Ct. 1303, 1311, 1315–16 n. 16, 75 L.Ed.2d 206 (1983). Nevertheless, a federal court may properly consider a challenge to the constitutionality of a state rule or law, and in such a case, the court does have subject matter jurisdiction. *See Feldman,* 460 U.S. at 483, 103 S.Ct. at 1315–16.

■ Plaintiff is, in part, challenging the state courts' interpretation of the state's partnership laws and, thus, she is seeking direct review of the state courts' decisions. In accordance with the Supreme Court's rulings cited above, this Court does not have jurisdiction over that portion of plaintiff's claim. However, plaintiff's complaint can be interpreted to assert a federal challenge to the constitutional validity of the New York courts' interpretation of the partnership laws as they affect plaintiff's due process rights, to the parties' conspiratorial agreement to deprive her of her property without due process, and to the constitutional adequacy of the process afforded her in state court. Consequently, although this court is without jurisdiction to directly review the state courts' decisions, the court would have jurisdiction to consider plaintiff's constitutional challenges if her complaint were to set forth viable causes of action.

## B.  Timeliness of Plaintiff's Action

■ Defendants' further allegation that plaintiff's action is untimely because it was filed more than three years after the firm's dissolution and her expulsion from LeBoeuf is without merit. Defendants incorrectly characterize plaintiff's challenge as based solely on her expulsion from the firm. Plaintiff's instant action is, instead, premised on the alleged constitutional violations resulting from Justice Lebedeff's dismissal of plaintiff's state lawsuits and the subsequent affirmance of that decision by the Appellate Division and the New York State Court of Appeals. Since the New York Court of Appeals finally dismissed plaintiff's appeal in May 1993, all of the actions of which plaintiff complains occurred within three years of the filing of the instant lawsuit and this action, therefore, is timely.

## C.  Res Judicata and Collateral Estoppel

■ Defendants' contention that the plaintiff has previously litigated these same claims in state court is similarly unpersuasive. As already discussed, plaintiff's due process claims challenge actions by the State and LeBoeuf defendants concerning Clapp's state lawsuits, including how plaintiff's claims were treated by Justice Lebedeff, the Appellate Division and the New York State Court of Appeals. They are for the first time before this Court and, therefore, are not barred as having previously been resolved in some other judicial forum.

## D.  Failure to State a Claim

Defendants also argue that plaintiff's claims are without merit and may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Clapp does not set forth any viable federal claim, under even the most liberal reading of her submissions to this Court. As I discuss fully below, Clapp did not have a protected property or liberty interest in the continuation of the LeBoeuf partnership. Alterna-

tively, assuming plaintiff had had an identifiable property or liberty interest in the LeBoeuf partnership, the defendants are not liable for any monetary damages to her because LeBoeuf is not a state actor subjecting it to liability under § 1983, Clapp has not sufficiently plead the existence of a conspiracy among the defendants, and because the State defendants are judicially immune to suit for damages. Finally, Clapp has not suffered any deprivation of her procedural due process rights in the state courts. Therefore, the complaint does not survive the motions to dismiss.

■■■ Dismissal under Rule 12(b)(6) is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991), quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In deciding a motion to dismiss under Rule 12(b)(6), the district court must assess the legal feasibility of the complaint. *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir.1991). In considering the motion, the allegations in the complaint must be construed favorably to the plaintiff. *Walker v. New York*, 974 F.2d 293, 298 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). I find that defendants have satisfied their heavy burden on their Rule 12(b)(6) motion and I further find that plaintiff does not present any facts which would entitle her to the remedies she seeks.

### 1. *The Property and Liberty Interests at Stake*

■■ Clapp claims that she is entitled to injunctive and monetary relief because the state court decisions deprived her of her due process and liberty interests in the continuation of the LeBoeuf partnership until certain notice and hearing requirements were met before her interests were terminated. Not

only does plaintiff misunderstand basic tenets of constitutional due process analysis, but plaintiff fails to comprehend the fundamental legal principles applicable to New York partnerships.

To succeed on her property right due process claim, Clapp "'must first identify a property right, second show that the state has deprived [her] of *that* right, and third show that the deprivation was effected without due process.'" *Local 342, Long Island Public Service Employees v. Town Board of the Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir.1994) quoting *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir.1990) (per curiam). There is simply no legally recognizable argument that Clapp has a protected property interest at stake herein.

It is well-settled constitutional jurisprudence that property interests subject to due process protections are based on sources independent of the federal Constitution. Such interests

> are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■■ It is also well-settled that an individual has a property interest in a benefit if they are entitled to the benefit, and that in determining whether an individual has such entitlement, a court must consider "the applicable statute, contract or regulation which purports to establish the benefit." *Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 30 (2d Cir.1994), citing *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991).

■■■ Clapp's interest in the LeBoeuf partnership was strictly a creature of statutory and contractual sources. Clapp admits that her partnership agreement with LeBoeuf was for an indefinite term. New York's courts have unambiguously held that a partnership agreement of an indefinite term is an at will partnership which may be

terminated by any partner at any time. *See, e.g., Shandell v. Katz,* 95 A.D.2d 742, 464 N.Y.S.2d 177 (1st Dept.1983); *Malmeth v. Schneider,* 18 A.D.2d 1030, 238 N.Y.S.2d 986 (2d Dept.1963). Accordingly, the formulation and existence of the partnership does not create, either under the contract or New York's laws, an entitlement or an interest in the indefinite or even limited continuation of the partnership. Therefore, the dissolution of LeBoeuf, with or without due process, cannot be a violation of constitutional rights because no right in the continuation of the partnership exists under New York law.

Clapp relies on sections 62, 63, 66–69, and 80–81 of New York's Partnership Law in support of her claims that she has a protected property interest in the partnership. These statutory provisions, however, are not a source for the proposed property right. Instead, these sections merely set forth the manner by which a partnership may dissolve and the particular liabilities and responsibilities the partners bears upon dissolution.

Section 63 provides for dissolution by decree of the court, and sections 66–69 address the partners' liabilities and use of partnership property after dissolution. Section 80 describes when a partnership name may be continued and section 81 requires that a partnership certificate be filed with the county clerk. Section 62, in turn, specifically permits a partnership to dissolve at the request of any partner at any time:

Dissolution is caused:

1. Without violation of the agreement between the partners,

\*      \*      \*      \*      \*      \*

(b) By the express will of any partner when no definite term or particular undertaking is specified, ...

N.Y. PARTNERSHIP LAW § 62 (McKinney 1988).

Nothing in these provisions can be construed to provide the basis for an entitlement to the continued existence of the partnership or the property rights which Clapp asserts herein.

■ This action, as well as Clapp's state law claims, involve an ordinary contract dispute between partners. Breach of contract

actions, however, do not implicate due process rights or involve constitutionally protected property rights. *See Martz,* 22 F.3d at 31 ("where a breach of contract does not give rise to a deprivation of a protected property interest, plaintiff's exclusive remedy 'lies in state court for breach of contract.'" quoting *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 968 (2d Cir.1988)). Accordingly, Clapp does not have a due process claim against the defendants because Clapp had no protected property interest which required due process before its termination or dissolution.

Clapp's liberty interest claim is similarly without merit. This Court is completely unable to comprehend how the dissolution of an at will partnership implicates federally protected liberty interests.

## 2. State Action

■ The LeBoeuf defendants argue that Clapp has not alleged the requisite state action required in a civil rights action. I agree with the LeBoeuf defendants' that, with respect to her due process and § 1983 claims against them, plaintiff has failed to properly plead the requisite state action.

Clapp characterizes the firm's dissolution and her expulsion from LeBoeuf as "state action" by LeBoeuf, because the State defendants placed the state' imprimatur on LeBoeuf's dissolution and Clapp's expulsion from the firm when they interpreted New York's partnership laws in a manner adverse to Clapp.

THE COURT: How does that make them into a state actor, as opposed to someone who is breaching a contract or breaching the law or doing some other private wrong? How does that make them into a state actor doing a wrong?

MR. O'CALLAGHAN: I am trying to remember Lugar v. Edmondson and these other cases. The Partnership Law is supposed to regulate their behavior. They have stood outside of the Partnership Law effectively and said, we don't need it, we don't have to abide by the principles of Partnership Law, we can deviate, we can reject it, we went public, we didn't have to make the dissolution. *And the judiciary has effectively countenanced that. That's*

*why they are a state actor. They've convinced the state they are regulated or purportedly regulated by the judiciary, absent all certification and filing. The judiciary had the responsibility to enforce that and didn't do it.* LeBoeuf hadn't presented any evidence that they did it. All the evidence is to the contrary.

Tr. 23–25 (emphasis added).

In order for the actions of private parties to constitute state action, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The Supreme Court has set forth a two-part approach in determining whether such conduct is "fairly attributable."

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.*, 457 U.S. at 937, 102 S.Ct. at 2753–54.

■ The mere fact that plaintiff was unsuccessful in convincing the state courts of her interpretation of the partnership laws, however, does not convert LeBoeuf into a state actor or make LeBoeuf's actions improper state action. The Supreme Court has clearly held that mere action by a private party pursuant to a state statute, without more, is insufficient to convert the party into a state actor, and, thus, satisfy the state action requirement of § 1983. *See id.* at 938–39, 102 S.Ct. at 2754.[3]

A district court must undergo a case-by-case, fact specific inquiry in order to determine whether the "something more" required for state action exists. *Id.* at 939, 102 S.Ct. at 2754–55. As I have already stated, Clapp has not alleged in her complaint that the LeBoeuf defendants did anything more than dissolve and reconstitute their firm. Clapp appears to argue that the State defendants' subsequent holding that the LeBoeuf defendants had not violated New York's partnership laws constitutes the "something more" which elevates LeBoeuf's otherwise private conduct to that of state action, because the state permitted LeBoeuf to take her partnership interest without the due process notice required in the law. I do not agree.

Under Clapp's proposed interpretation of the state action test, any private entity or individual who complies with a state statute in dissolving or forming a business venture would be considered a state actor, subject to federal liability. Thus, for example, any person who seeks and improperly obtains a license from the state, such as a doing business license, would be a state actor. Such an interpretation of the federal statutes and federal caselaw is absurd and ignores the requirement that there be action in a private party's conduct beyond mere compliance with state law. This case does not present a situation of a private entity or individual acting as the state for purposes of § 1983. This is a private entity acting for its own interests, neither compelled by or in joint activity with the state. Accordingly, there is no viable § 1983 due process claim against the LeBoeuf defendants and Clapp's claims against the LeBoeuf defendants must be dismissed.

### 3. *The Conspiracy Claim*

■ As another basis for federal jurisdiction and as a separate claim against both the LeBoeuf and the State defendants, plaintiff

---

**3.** The Supreme Court has proposed various "tests" for determining when particular private conduct constitutes state action. These include: the "public function" test; the "state compulsion" test; the "nexus" test; and the "joint action" test. *See Lugar*, 457 U.S. at 939, 102 S.Ct. at 2754–55 (setting forth tests applicable to state actor inquiry). *See Lugar*, 457 U.S. at 939, 102 S.Ct. at 2754–55 (identifying the various tests);

*Rochez v. Mittleton*, 839 F.Supp. 1075, 1081 (S.D.N.Y.1993) (finding no state action under the Supreme Court's two-part analysis, and further finding no state action under the nexus test). Clapp has not made out any set of facts which could, under any of these tests, arguably convert the activities of the LeBoeuf defendants into state action.

has alleged that the parties conspired to deprive her of her partnership interest without due process of law. This allegation is unsupported in the complaint by any facts from which the existence of a conspiracy could be reasonably inferred.

The Second Circuit "has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (per curiam). "It is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights." *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990) (citations omitted), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991). Here, plaintiff has pointed to no conduct or words denoting some agreement between the parties to deprive Clapp of her rights, and there is not a scintilla of evidence to support plaintiff's conclusory statements about the existence of a conspiracy.

Indeed, as is made clear by counsel's argument at the Hearing, plaintiff's conspiracy claim is based wholly on conjecture.

> THE COURT: Are you saying that the four Appellate Division judges conspired among themselves and with LeBoeuf individually or in combination thereof in some way to deprive you of your rights? If not, then are you saying that you simply misread the law?
>
> MR. O'CALLAGHAN: It is not a simple misreading of the law. The Partnership Act has been applied uniformly throughout the states of the Union never in such a fashion as this. The Appellate Division was responsible, as was Judge [*sic*] Lebedeff, for enforcement of Sections 80 and 81, which is not a mere notice provision but a requirement of the law as to dissolution or a continuation of business in the same name. *I submit that that is a tacit agreement between the judiciary and LeBoeuf not to enforce the law on their behalf, because there's no other reason they wouldn't have enforced it—not even addressed it.* It's not included in Lebedeff's decision. It's not included in the Appellate

Division's affirmance decision. LeBoeuf hasn't answered it at all. I think they have one sentence in the several hundreds of pages of briefing, which is to say that it is not really changed by LeBoeuf.

Tr. 19–20 (emphasis added).

Merely because Clapp lost in state court is not enough to reasonably conclude that a conspiracy between multiple members of the judiciary and the LeBoeuf defendants. Therefore, plaintiff's conspiracy claim must be dismissed.

### 4. *Judicial Immunity*

■ The State defendants invoke the protection afforded to them under the doctrine of judicial immunity against Clapp's claims that they violated her constitutional rights. The State defendants maintain that judicial immunity shields a judge from monetary liability for conduct arising from actions done in the "exercise of his or her judicial function, even where these acts are in excess of jurisdiction or alleged to have been done maliciously or in bad faith." State Defendants' Memorandum of Law in Opposition to Plaintiff's Application for a Preliminary Injunction and in Support of Defendants' Motion to Dismiss, p. 12.

Judges' immunity from suits for money damages is well-recognized. *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (citations omitted). The Supreme Court has identified only two exceptions to the rule of absolute judicial immunity. First, a judge is not protected by immunity for "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* (citing *Forrester v. White,* 484 U.S. 219, 227–29, 108 S.Ct. 538, 544–45, 98 L.Ed.2d 555 (1988)). Second, a judge is not "immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (citing *Forrester,* 484 U.S. at 356–57, 98 S.Ct. at 1104–05; *Bradley v. Fisher,* 13 Wall 335, 351, 20 L.Ed. 646 (1872)).

Plaintiff Clapp's entire claim against the State defendants is based on their treatment of her two state lawsuits, the procedure followed by Justice Lebedeff and the Appellate Division, and their ultimate decision on the

merits. There is no legitimate basis in the complaint to conclude that the actions of which Clapp complains are anything but judicial in nature and, therefore, properly within the judicial functions of these defendants. Moreover, Clapp does not argue that the state courts and the State defendants were without jurisdiction to decide her claims. Consequently, Justice Lebedeff and the Appellate Division defendants are immune to suit by the plaintiff for monetary damages, and those claims seeking such damages must be dismissed.

### 5. *Procedural Due Process*

Clapp's further assertion that she was denied due process based on the state courts' refusal to provide her with a full and fair opportunity to present her claims is unsupported by the allegations in the complaint and are wholly without merit. Clapp admitted to this Court that she had a full opportunity to submit her factual and legal arguments to Justice Lebedeff and the appellate courts. Clapp's basis for her charge of a violation of her due process rights against the State defendants is that Justice Lebedeff dismissed Clapp's lawsuits without allowing Clapp to complete discovery. However, the complaint does not allege that Clapp was denied the opportunity in the state courts to present her legal and factual claims in written submissions or to argue the motions before the courts. Therefore, the allegations in Clapp's complaint of due process violations by the State defendants are insufficient to state a claim.

### III. *Enjoining Further Litigation*

■ The LeBoeuf defendants have requested that I enjoin plaintiff from filing any further actions against them, without prior permission from the Court. The LeBoeuf defendants argue that injunctive relief is warranted due to the "numerous baseless, and duplicative actions plaintiff has instituted in this State and in view of the fact that all of these claims pertain to the very same set of facts as the original federal law action in 1990 and in the subsequent state court proceedings, . . . ." Reply Memorandum in Support of the LeBoeuf Defendants' Cross Motion, p. 19.

■ Plaintiff Clapp has certainly vigorously litigated her termination as a LeBoeuf partner. Moreover, she has certainly burdened this Court with needless and convoluted submissions. The right of free and open access to the courts, however, is fundamental and should not be restricted, unless extraordinary circumstances exist. Although plaintiff's prior federal and state actions were all premised on the propriety of LeBoeuf's dissolution and reformulation, I cannot say that those lawsuits were duplicative of this action. I am not prepared to, or justified in, enjoining any and all further litigations that have not first been approved by this Court when this action was only commenced after plaintiff exhausted her state remedies. Therefore, the instant motion to enjoin plaintiff from future litigation is denied. I certainly do not restrict defendants from renewing this motion in the future if plaintiff's conduct should warrant it. I also remind plaintiff's counsel, moreover, as I did at one of our earlier conferences, that his relationship as plaintiff's husband can quite easily cloud his judgment as a lawyer and that he and plaintiff may be better served in conferring with an independent attorney before filing papers or actions in court.

### IV. *The Motions for Rule 11 Sanctions*

Both the LeBoeuf defendants and plaintiff have moved for sanctions, pursuant to Fed. R.Civ.P. 11. Rule 11, as recently amended, provides as follows:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances.
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal

of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

██ Imposition of sanctions under recently amended Rule 11 is discretionary, not mandatory. *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994). Moreover, application of Rule 11 sanctions is limited "to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). This Circuit has warned that Rule 11 sanctions "should be imposed with caution." *Knipe*, 19 F.3d at 78. Consequently, Rule 11 sanctions should not be imposed indiscriminately.

██ Defendants argue that sanctions here should be imposed on Clapp and her attorney because her motion to recuse was wholly unsupported and was "clearly interposed for an improper purpose, namely, to avoid a decision by a judge who has already denied her preliminary injunctive relief." LeBoeuf Defendants' Letter Dated February 18, 1994, p. 5. I cannot agree with defendants that the motion to recuse was filed strictly to avoid an adverse decision from me. I had already ruled adversely on plaintiff's motion for preliminary relief. In addition, Clapp's motion predated the Supreme Court's decision in *Liteky v. United States,* — U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), upon which I based my decision denying the motion to recuse. I cannot penalize plaintiff for filing a motion without benefit of the Supreme Court's *Liteky* decision as guidance on the appropriate standards for recusal.

Clapp's Rule 11 cross-motion is also denied. Clapp is simply wrong on the facts and even if she were not, the conduct she complains of does not warrant sanctions.

### Conclusion

For the reasons discussed above, the motions to dismiss, pursuant to Fed.R.Civ.P. 12(b), of all defendants are **GRANTED.** The LeBoeuf defendants' motion to enjoin plaintiff from filing further actions on this matter, without the prior permission of this Court, is **DENIED.** The LeBoeuf defendants' and plaintiff Alison Clapp's motions for sanctions are also **DENIED.** The Clerk of the Court is directed to enter judgment in accordance with this Order.

**SO ORDERED.**