**CHAMPLAIN ENTERPRISES,
INC., Plaintiff,**

v.

**CHUBB CUSTOM INSURANCE
COMPANY, Defendant.**

No.  02–CV–1579.

United States District Court,
N.D. New York.

April 7, 2003.

Harris Beach LLP, Plattsburgh, NY, Edward J. Trombley, William L. Owens, of Counsel, Attorneys for Plaintiff.

Iseman, Cunningham, Riester & Hyde LLP, Albany, NY, Michael J. Cunningham, of Counsel, Attorneys for Defendant.

Hogan & Hartson, Washington, D.C., David J. Hensler, Kristen A. Donoghue, of Counsel, Attorneys for Defendant.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Champlain Enterprises, Inc. ("plaintiff") brought suit against defendant Chubb Custom Insurance Company ("defendant"), seeking a declaratory judgment that defendant is obligated to defend and, if necessary, indemnify it in a suit brought against plaintiff by participants in its employee stock ownership plan.

Defendant filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff opposed. Oral argument was heard March 28, 2003, in Albany, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

### A. The Parties

Defendant, a subsidiary of Chubb Group of Insurance Companies, is an insurance company with its principal place of business in New Jersey. It issued an original and two renewal insurance policies to plaintiff.

Plaintiff's affiliate, CommutAir, operates a commuter air service, and its officers and directors were covered under the insurance policies issued by defendant. CommutAir sponsors an Employee Ownership Stock Plan ("ESOP") for its employees. It, plaintiff, and its officers, directors, and

shareholders were sued by participants in the ESOP.

## B. The Underlying Action Against Plaintiff

On November 1, 2001, suit was filed by ESOP participants against plaintiff, CommutAir, and certain of its shareholders, officers, directors, and members of the administrative committee responsible for administering the ESOP ("underlying defendants"). The suit alleged "that the ESOP was caused to pay more than fair and adequate consideration for shares of [plaintiff] purchased by the ESOP in or about March 1994 and that the ESOP fiduciaries and parties in interest engaged in subsequent wrongful acts and/or failed to remedy the prior wrongdoing, resulting in damage to the ESOP." (Amended Complaint, Docket No. 7, Exh. C, ¶ 1; Exh. D, ¶ 1). "Through th[e] lawsuit ... the ESOP participants seek to hold accountable those ESOP fiduciaries who breached their duties in permitting the buy-in to proceed at an inflated price and other wrongful acts, and those parties in interest, who received ill-gotten gains in certain prohibited transactions." (Id.).

Among the named defendants are three individuals who were, at all relevant times, officers, directors and shareholders of CommutAir ("the shareholder defendants"). The shareholder defendants collectively own a large majority of CommutAir voting stock, and wholly own plaintiff. Also individually named were the President of CommutAir and the company's Chief Legal Counsel. The underlying complaint alleges that all individual defendants served as members of a committee responsible for the administration of the ESOP and/or controlled CommutAir and, consequently, the administration of the ESOP.

The underlying complaint alleges three broad counts: 1) breach of fiduciary duty under ERISA; 2) removal of fiduciaries under ERISA's equitable relief provision; and 3) state law claims of breach of fiduciary duty, unjust enrichment, and waste and diversion of corporate assets. (Id., Exh. D). The first count relates to the alleged overcharge to ESOP of its CommutAir stock purchase, and the failure of the individual named defendants to object thereto. Specifically, upon the formation of the ESOP, it entered into an agreement whereby it would purchase 30% of CommutAir's issued and outstanding stock from the shareholder defendants, who then owned all of it. An appraisal of the stock was performed, and the ESOP was to purchase 540,000 shares of CommutAir stock for the purchase price of $60,000,000. The purchase of the stock required the ESOP to issue promissory notes to the shareholder defendants for an aggregate sum of $51,000,000, and the $9,000,000 down payment was procured through a loan from CommutAir. The stock purchased was to serve as collateral for the loans. The purchase took place on March 14, 1994.

The underlying complaint alleges that the appraisal of the stock value, and of CommutAir as a business, was flawed, resulting in a substantial overcharge to the ESOP. Specifically, the appraisal relied upon future performance projections and other information provided by the shareholder defendants, who stood to profit from the transaction, and the valuation methodologies failed to take into account certain factors which would discount the fair market value of the stock. Also alleged is the failure of the underlying defendants to disclose crucial details of two separate IRS tax audits of CommutAir. The underlying complaint alleges the individual defendants, and therefore CommutAir and plaintiff, provided the data influencing the appraisal or knew of it and

failed to remedy the situation, and took active steps to conceal the wrongdoing.

The second count also relates to the alleged active concealment and misrepresentation of the underlying defendants with respect to the 1994 stock purchase. The underlying complaint seeks to invoke the court's equitable powers to remove the individual defendants as fiduciaries.

The third count relates largely to the acquisition, transfer, and renovation of certain CommutAir airplanes. Specifically, the underlying complaint alleges, in 1994 or 1995, CommutAir transferred to plaintiff title to four airplanes that had been operational in World War II. It is alleged that CommutAir received no or inadequate consideration for said transfers. It is further alleged that the four planes were stored in a hangar owned by CommutAir, and that CommutAir received no or inadequate consideration for said storage services. It is further alleged that the four planes were renovated at substantial cost by CommutAir employees or agents from 1994 to 2000, and that CommutAir was not reimbursed therefor by plaintiff. The underlying complaint also alleged that the 1994 purchase of a corporate jet for the exclusive use of the shareholder defendants was a waste of corporate assets, especially in light of CommutAir contracts with U.S. Airways, and then later with Continental Airlines, whereby the shareholder defendants were entitled to free first class travel aboard those airlines' flights in exchange for CommutAir's operation of regional airline services.

### C. The Insurance Policy Between Plaintiff and Defendant

On May 20, 1999, defendant sold to plaintiff an insurance policy under the policy number 8158–77–80 MTO. The policy provided coverage for plaintiff from May 20, 1999, to May 20, 2000. The policy was twice renewed under the same policy number for the policy periods of May 20, 2000, to May 20, 2001, and May 20, 2001, to May 20, 2002. There seems to be no dispute that the defendants in the underlying action, with the exception of one, are considered insureds under the policies.

Under the policy, defendant agreed to provide liability coverage for all losses an officer or director of CommutAir "becomes legally obligated to pay on account of any Fiduciary Claim first made against such [officer or director] during the Policy Period ... for a Wrongful Act committed, attempted or allegedly committed or attempted, before or during the Policy Period." (Amended Complaint, Docket No. 7, Exh. A, § 2, Insuring Clause 2). A "wrongful act" is: "any breach of the responsibilities, obligations or duties imposed upon fiduciaries of [a] Sponsored Plan by [ERISA], or by the common or statutory law of the United States, or any state or other jurisdiction anywhere in the world"; any other matter claimed against any Insured Organization or any Insured Person solely because of such Insured Organization's or such Insured Person's service as a Fiduciary of any Sponsored Plan"; or "any negligent act, error or omission in the Administration of any Sponsored Plan." (Id., Exh. A at § 38). Under Section 8, entitled "Exclusions Applicable to All Insuring Clauses," three exclusions from coverage are outlined, none of which deal with defendant's obligation to provide coverage for claims arising out of the prior wrongful acts of CommutAir fiduciaries. (Id., Exh. A at § 8).

In accord with the policy mandate that no modification of the policy was effective "except when made by a written endorsement ... which is signed by an authorized representative of defendant," (Id., Exh. A at § 35), attached to the submitted policy is an "endorsement," under which "[i]t is

agreed that Section 8, ... is amended" to read that defendant "shall not be liable for Loss on account of any Claim ... based upon, arising from, or in consequence of Wrongful Acts or Interrelated Wrongful Acts which were committed, attempted or allegedly committed or attempted in whole or in part prior to May 20, 1999." (Id., Exh. A at § 8; Endorsement No. 3, hereinafter referred to as "the prior acts exclusion"). "Interrelated Wrongful Acts means all causally connected Wrongful Acts." (Id., Exh. A at § 38).

Plaintiff claims that prior to the effective date of the original policy, it notified J & H Marsh & McLennan, Inc. ("J & H Marsh"), an authorized agent of defendant who apparently negotiated the policy, that plaintiff wished to have the prior acts exclusion removed from the policy. Plaintiff claims it "provided [defendant] with the requisite documentation to remove the prior acts exclusion and was advised that such exclusion would be removed." (Amended Complaint, Docket No. 7, ¶ 11). In support thereof, plaintiff directs attention to an April 29, 1999,[1] letter from CommutAir's president to J & H Marsh. (Docket No. 16, attached). The letter references the second IRS audit, a contract renewal between CommutAir and U.S. Airways, CommutAir's willingness to deal with "Y2K" issues, a summary of CommutAir's employment practices liability information, the preferred stock appraisal, and the procedure in place for an ESOP participant who wishes to "cash out." (Id.). Plaintiff indicates that this letter provided the requisite documentation to have the prior acts exclusion removed.

However, in a "confirmation" to plaintiff dated May 24, 1999, J & H Marsh informed plaintiff that the prior acts exclusion would be "removed with receipt and acceptance of a signed Chubb application and warranty." (Id., Exh. B). Plaintiff, though submitting no documentation that said application and warranty was completed and/or sent to J & H Marsh, contends that, pursuant to the negotiations, it believed the prior acts exclusion was removed "long prior to the underlying action having been instituted." (Id. at ¶ 12). The endorsement, amending the policy to include the prior acts exclusion, appeared in both renewal policies without objection from plaintiff.

## III. DISCUSSION

### A. Standard for Rule 12(b)(6) Motion to Dismiss

In deciding a Rule 12(b)(6) motion, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene,* 743 F.Supp. 273, 276 (S.D.N.Y.1990); *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988).

### B. Applicability of Prior Acts Exclusion

■ The gravamen of contract interpretation is the intent of the parties,

---

**1.** In the Amended Complaint, plaintiff claims the date of the letter is April 29, 2002. (Docket No. 7, ¶ 11). This, however, was a "typographical error," as the copy of the letter itself clearly reflects the date of the letter as April 29, 1999. (Docket No. 16, attached).

" '[t]he best evidence of [which] is what they say in their writing.' " *Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 750 N.Y.S.2d 565, 569, 780 N.E.2d 166 (2002) (quoting *Slamow v. Del Col,* 79 N.Y.2d 1016, 584 N.Y.S.2d 424, 425, 594 N.E.2d 918 (1992)). Relevant here is the policy provision dealing with modification. Specifically, under the policy, no modification of the policy is effective "except when made by a written endorsement ... which is signed by an authorized representative of defendant." (Amended Complaint, Docket No. 7, Exh. A, § 35). This provision, as a matter of law, is unambiguous and therefore enforceable. *See R/S Associates v. New York Job Development Auth.,* 98 N.Y.2d 29, 744 N.Y.S.2d 358, 360, 771 N.E.2d 240 (2002) ("We have long adhered to the sound rule in the construction of contracts, that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language") (internal quotations and citations omitted); *W.W.W. Associates, Inc. v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639 (1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms").

■ In compliance with the modification provision, attached to the original and both renewal policies was a signed written endorsement, adding to the policy an exclusion of coverage for claims against an insured "based upon, arising from, or in consequence of Wrongful Acts or Interrelated Wrongful Acts which were committed, attempted or allegedly committed or attempted in whole or in part prior to May 20, 1999." (Amended Complaint, Docket No. 7, Exh. A, Endorsement No. 3). This prior acts exclusion thus became part of the contract between the parties, and any

modification or elimination of it also needed to comply with the policy's modification provision.

There is evidence that the subject of removing the prior acts exclusion arose between plaintiff and J & H Marsh, the agent acting on behalf of defendant. Plaintiff claims it notified J & H Marsh of its desire for such removal as early as April of 1999, and J & H Marsh sent plaintiff a confirmation, in which it advised that the prior acts exclusion would be removed, but only "with receipt and acceptance of a signed Chubb application and warranty," i.e., in compliance with the policy modification provision. (Id., Exh. B). Though plaintiff contends it "provided [defendant] with the requisite documentation to remove the prior acts exclusion," (Id. at ¶ 11), the April 29, 1999, letter makes no mention of the exclusion, and CommutAir has submitted absolutely no other documentary evidence that such information was provided.

Plaintiff, perhaps realizing this, argues that it was nevertheless "advised that such exclusion would be removed," that it "believed that the so-called prior acts exclusion had been removed from [the policy] long prior to the underlying action having been instituted[,]" (Id. at ¶¶ 11–12), and that further investigation will reveal that the parties did agree to the removal of the exclusion. Initially, it is noted that the endorsement adding the exclusion to the policy appeared in both renewal policies without objection from plaintiff. While plaintiff contends that it, allegedly like any other insurance policy holder, did not read the renewals from beginning to end, this does not mean that it is excused from the consequences of not doing so. Provisions are in a policy for a reason, and plaintiff's arguments contradict each other. On one hand, plaintiff argues that it did not and should not be expected to read through

every policy provision. On the other hand, plaintiff argues that it was engaged in negotiations with J & H Marsh targeted specifically at removing the prior acts exclusion. If the latter were true, one can make little sense of the failure to ensure that such an apparently important exclusion was indeed removed from the policy.

■ Further, as plaintiff has admitted that it is not in possession of any documentary evidence proving it sent an application and warranty to have the exclusion removed, allowing plaintiff to attempt to prove its belief in the removal of the exclusion through discovery poses serious parol evidence problems. A court may resort to extrinsic evidence *only* if the contract or contract provisions at issue are ambiguous. *See Greenfield*, 750 N.Y.S.2d at 569, 780 N.E.2d 166; *Charter Realty & Development Corp. v. New Roc Assoc.*, 293 A.D.2d 438, 739 N.Y.S.2d 456, 457 (2d App.Dept. 2002). As noted, no ambiguity is present. Accordingly, "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." *Giancontieri*, 565 N.Y.S.2d at 443, 566 N.E.2d 639. Therefore, the prior acts exclusion is part of the policy and is enforceable.

### C. Effect of Prior Acts Exclusion on Defendant's Obligation to Defend

The effect of the prior acts exclusion on defendant's duty to defend plaintiff in the underlying action must next be determined. The first count in the underlying complaint is for breach of fiduciary duty in violation of ERISA. It relates to activities surrounding ESOP's 1994 purchase of 540,000 shares of CommutAir stock. Specifically alleged by the underlying complaint to be part of the breach of fiduciary duty is certain information provided during the appraisal of the stock. All of this was done prior to the cut-off date of the exclusion (1999) and defendant is therefore under no obligation to defend plaintiff on the first count. The second count also deals explicitly with activities occurring prior to the cut-off date of the exclusion. Defendants are therefore also relieved of defending that count.

■ The only count for which defendant's obligation to defend is really at issue is the third count, for breach of fiduciary duty, unjust enrichment, and waste/diversion of corporate assets in violation of state law. To the extent this count relates at all to the alleged stock purchase overcharge, and the event surrounding it, defendant has no duty to defend. Plaintiff and defendant do seem to disagree, however, as to the exclusion's applicability to the specific claims of waste and diversion of corporate assets, as those claims relate to the acquisition, renovation, storage, and/or transfer of certain airplanes.

In 1994 or 1995, the underlying complaint alleges that CommutAir transferred title to four airplanes to plaintiff for no or inadequate consideration. It also alleges that the planes were then stored and renovated by CommutAir for no or inadequate consideration, or without any reimbursement from plaintiff. The alleged improper title transfer itself is certainly covered by the exclusion, as it occurred prior to the 1999 cut-off date. The alleged improper storage and renovation of the planes, allegedly occurring from 1994 to 2000, are also explicitly covered at least in part by the exclusion. Any portion of the alleged improper storage and renovation not explicitly covered by the exclusion most certainly arise from the portion that is covered, much less from the alleged improper title transfer of the planes in 1994 or 1995. Thus, to the extent that the third count relates to the transfer, storage, and reno-

vation of the four World War II-era airplanes, the prior acts exclusion applies and defendant has no obligation to defend plaintiff in the underlying action.

■ Also part of the third count is the alleged improper acquisition of a corporate jet, which was used to transport the shareholder defendants. The subject was broached by an ESOP participant in June of 2000. Plaintiff argues that the acquisition of the jet itself in 1994 was not improper or objectionable, and, at worst, the alleged corporate waste relating to it occurred after the cut-off date of the prior acts exclusion. This argument is rejected. Contrary to plaintiff's contention, the underlying complaint does indeed object to the original acquisition of the jet. Specifically, it is alleged to be a waste of corporate assets because CommutAir was party to contracts with U.S. Airways and Continental, under which the shareholder defendants were entitled to first class, no cost air travel. Thus, the original acquisition of the corporate jet in 1994 was clearly the gravamen of the corporate waste claim. The fact that the jet was used after the cut-off date of the prior acts exclusion is irrelevant. The waste being alleged is not the use of the corporate jet—it was the acquisition of the corporate jet, for which CommutAir paid approximately $5,800,000. In any event, to the extent that this particular part of the third count also alleges that using the corporate jet is *also* a waste of corporate assets, the exclusion still applies, as such improper use clearly arises from the original wasteful acquisition.

## IV. CONCLUSION

The prior acts exclusion was part of the insurance policy. It was included in original policy, as well as in the two renewals of the original policy, with no objection from plaintiff. While there may have been discussions about the removal of the exclusion from the policy, plaintiff failed to comply with the unambiguous policy terms necessary to effectuate such removal. All counts in the underlying complaint deal with either allegations of misconduct explicitly covered by the prior acts exclusion, or events that directly arose from, or were a consequence of, the explicitly covered allegations. Therefore, defendant has no duty to defend plaintiff in the underlying action.

Accordingly, it is

ORDERED that

1. Defendant Chubb Custom Insurance Company's motion to dismiss is GRANTED; and

2. The Amended Complaint is DISMISSED in its entirety.

The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.